⎯⎯⎯⎯⎯o•o•⎯⎯⎯⎯⎯

The People on the relation of John J. Speed v. Thomas ⌊H. Hartwell.

*Quo warranto: office terminated since information filed.*— An information to try the right to a public office will not be dismissed on the ground that the office has expired since information filed. To oust the incumbent is not the sole object of the proceeding, but, under the statute, if he is found guilty of the intrusion, [a fine may be imposed, and costs recovered; and if the relator claims the office, and is found entitled to it, he may recover damages.

*Election required by law to be held: neglect to give notice.* — Where a city charter requires a vacancy in a city office to be filled at the next annual election, and directs the city clerk to give notice of the election, and of the offices to be filled, and the notice actually given by him makes no mention of the vacancy, this default of the clerk does not invalidate the election for this vacancy.

THE PEOPLE *v.* HARTWELL.

*Statute, construction of: when directory.* — The statute requiring this notice to be given is directory merely.

*Notice of proceedings of city council.* — Electors of a city are presumed to have notice of the proceedings of the common council, which are published in the official paper of the corporation. They are therefore presumed to have notice of a vacancy which has been declared by the common council.

*Plea, conclusion of.* — Information charging respondent with intruding into a public office; averring that an election to fill the office was held, that relator received a certain number of votes, and respondent a certain less number, and that relator was thereby elected. A plea to this information, that no election was held for the office, and that no votes were cast for that purpose, should conclude to the country, and not with a verification.

*Heard April 16th and 20th. Decided July 15th.*

Information in the nature of a quo warranto.

The information set forth that, in November, 1861, Thomas McEntee was duly elected city attorney of Detroit, and qualified as such, and entered upon the performance of his duties: that he removed from Detroit and thereby vacated the office on the first day of September, 1863, and by a resolution of the common council, duly approved and published in the official paper of the city, the office was declared vacant: that a general election was held in said city on the third day of November, 1863, at which a large number of votes, to wit: 2800 in number, were cast for the said John J. Speed for the office of "city attorney, to fill vacancy," that being the highest number cast for said office for any person; that a less number of ballots, to wit, fifty or less in number, were cast for the said Thomas H. Hartwell for said office of "city attorney, to fill vacancy," and that a large number of ballots, to wit, 2800, were cast for said Speed for the office of "city attorney, for the long term," and also a large number of ballots, to wit, 3000, for said Hartwell, for the office of "city attorney" (but did not designate whether for the vacancy or long term), and a small number of ballots, to wit, fifty, were cast for said Hartwell for the office of "city attorney, for the long term;" that on the canvass of said votes the city canvassers declared, as the result of said election, that said Speed was elected city attorney to

fill vacancy, and said Hartwell for the long term: that the city clerk notified said Speed of his said election, and of the amount of his official bond, and that he gave bond accordingly, took the oath of office, and entered upon the discharge of his duties. It then charges that said Hartwell intruded into and usurped said office, and unlawfully holds and exercises the same, to the damage of the said Speed of $100.

The subsequent pleadings were as follows:

*First plea.* And now, on this fifth day of January, 1864, comes the said Thomas H. Hartwell, in his own proper person, and having heard the said information read, for a plea in that behalf, with reference to so much, and such part thereof, as charges this defendant with having entered into, used, exercised, claimed and usurped the said office of city attorney, without any legal election, appointment, warrant or authority therefor, this defendant says that heretofore, to wit, on the first day of September, 1863, the said office of city attorney became and was vacant for the balance of the unexpired term thereof, to wit, down to the 12th day of January, 1864, when the next regular term would commence under and by virtue of the city charter of Detroit; that thereupon, on the first day of September, 1863, the common council of Detroit, being then in session, by a resolution, duly passed, entered and approved, according to law, appointed this defendant to hold said office during the remainder of said unexpired term thereof; and thereupon this defendant qualified, according to law, by taking the oath prescribed by law to be taken by the incumbent of said office, according to law, and fully entered into said office, and upon the discharge of its duties; that at the next general election in said city, held on the third day of November, 1863, there was no election to fill said office for said unexpired term, nor was there any notice given of said vacancy, or any election to fill it, nor has there been

any election, at any other time, to fill the same; that this defendant has been in no way removed from said office, but, on the contrary, on the 17th day of November, 1863, the said common council, being then in session, adopted or passed a resolution or motion, in due form of law, upon the report and recommendation of the judiciary committee of said council, that this defendant was the legal incumbent of said office, duly authorized to hold the same, and discharge its duties, until the 12th day of January, 1864, when his successor in said office, for the next regular two years term thereof, will duly qualify, according to section thirteen of chapter two, of the charter of said city; that this defendant claims to hold said office, and does hold it, with all its privileges, by virtue of such appointment, and the authority thereof, as it was lawful and proper for him to do; and this defendant will continue to claim said office until his successor shall qualify, as aforesaid; without this, that he in any way usurped said office, or entered into, used or exercised the same without warrant or authority of law; and this the said defendant is ready to verify.

*First replication to first plea.* And now, the said People of the State of Michigan, by Albert Williams, Attorney General of said State, who for the said People in this behalf appears, as to so much of the said plea of the said Thomas H. Hartwell, by him first above pleaded, as alleges that there was no election held to fill the vacancy in said office of attorney of said city of Detroit, say, that the said People ought not to be barred from prosecuting or maintaining said information against him, because they say that there was an election to fill said office of attorney of said city of Detroit, for said unexpired term, to wit, at the annual election of said city of Detroit, on the third day of November, 1863; and this the said People pray may be inquired of by the country.

On this replication the defendant joined issue.

*Second replication to first plea.* And the said People
of the State of Michigan, for further replication in this
behalf, as to so much of the said plea of the said Thomas
H. Hartwell, by him first above pleaded, as alleges that
there was no notice given of an election to fill the said
office of attorney for said unexpired term, say that the
said People ought not to be barred from prosecuting or
maintaining said information against him, because they say,
although true it is no notice was given of any election
to fill said office of attorney for the said unexpired term,
yet the said People say that the clerk of said city of
Detroit, to wit, on the 8th day of October, 1863, did
cause to be published in two daily newspapers published
in said city, to wit, *The Detroit Free Press,* and the
*Detroit Daily Advertiser and Tribune,* a notice, of which
the following is a copy:

[Here follows a notice of the general election under
the charter, specifying the several offices to be filled for
the full term.]

And this the said People are ready to verify. Where-
fore they pray judgment, etc.

*Demurrer.* The defendant demurred to said second
replication, and alleged as causes of demurrer: *First,*
That said second replication had not a proper conclusion.
*Second,* The notice therein set forth was not in fact or
law a notice to fill said office of city attorney for said
unexpired term. *Third,* Said replication, on its face,
admits that there was no notice of an election to fill
said office for said unexpired term. *Fourth,* Said second
replication is, in other respects, uncertain, informal, and
insufficient.

*Second plea.* And for a further plea in this behalf,
with reference to so much and such part of said informa-
tion as sets forth a pretended right in the relator, John
J. Speed, to hold said office, this defendant says that no
public notice whatever was given of any vacancy in said

office of city attorney; that the electors of said city had no notice of the same; that no notice was given of an election to fill said vacancy, to be held on said November 3d, 1863, or at any other time; that the electors of said city knew of no such election, and did not vote to fill any such vacancy, on said day, or any other day, and no votes or ballots were cast for said office to fill any such vacancy, on said day, or on any other day, and said Speed has received no legal certificate of any such election from any board of canvassers, or any other competent authority; and any steps he may have taken to qualify for said office, or to enter upon its duties, are null and void; without this, that there was a notice of said vacancy and election, or that there was an election to fill it, and that votes were cast to fill it, or that said Speed was elected to fill it, or is in any way in law entitled to said office; and of this the said defendant puts himself upon the country.

*Demurrer.* The People demurred to this second plea, and alleged the following causes of demurrer: *First,* That the said Thomas H. Hartwell hath, in and by his said second plea, offered to put in issue matter not properly issuable; and, *Secondly,* That the said second plea ought to have concluded with a verification, and not to the country; and that the said plea is in various other respects informal and insufficient.

*Third plea.* And for a further plea in this behalf, with reference to so much and such part of said information as sets forth an election held, and votes cast to fill the office of city attorney, for the term of two years, commencing, according to the city charter, on the second Tuesday of January, that is to say, the 12th day of January, 1864, this defendant says that there was a general election held on the third day of November, 1863, in said city, to fill the office of city attorney of said city, together with the other offices generally thereof, for the term of

two years, commencing on the second Tuesday of January, 1864; that due notice was given, according to law, of such general election; that at such general election, a large number, to wit, seven thousand votes, were cast by the electors of said city to fill said office of city attorney, for said two years term, denominated the "long term" in said information; that of said votes thus cast for said office of city attorney, this defendant received a large majority, to wit, five thousand of all the votes cast; that he was consequently duly elected to fill said office for said term of two years, and he received his certificate of election thereto from the proper board of canvassers, and will be ready to qualify to enter upon the duties of said office, for said term, on the second Tuesday of January next, according to the city charter; without this, that he has in any way intruded into said office for said term, or that said John J. Speed was elected to the same; and this the said defendant is ready to verify. Wherefore this defendant prays judgment, etc.

*Demurrer.* The People demurred to said third plea, and alleged as causes of demurrer, that the said Thomas H. Hartwell hath, in and by his said third plea, offered to put in issue matter not properly issuable and immaterial; and that said third plea is in other respects informal and insufficient.

*J. J. Speed, in person,* and *G. V. N. Lothrop,* for the relator:

1. The real issue made by the demurrer to the second replication to the first plea, is, whether it was necessary that a separate and distinct notice, under all the facts disclosed by the pleadings, should have been published to make the election valid.

It is submitted that the charter imperatively required the vacancy to be filled at the annual election in November, and of this the electors were bound to take

notice, as they are conclusively presumed to have known the law.

· By the publication of the resolution of the common council declaring the vacancy, the electors were duly informed that a vacancy had occurred. But even without this, it is submitted that there would be little danger in holding that the electors are presumed to know when vacancies occur, and what officers are required to be elected. With the multitude of office seekers and politicians in this country, and an active and enterprising political newspaper press, it would be strange if the electors were allowed to remain ignorant that any office subject to their disposal was vacant, especially an office like that in question.

By the general election notice given by the city clerk, the electors were informed of the places where the votes might be cast.

All the defendant · could claim it was requisite that a notice of an election to fill the vacancy should contain, would be, *first,* a statement of the existence of the vacancy; *second,* that the law required the vacancy to be filled; *third,* notice of the time of the election; *fourth,* notice of the place of the election. ·

We claim that the electors had this notice.

They were informed of the vacancy by the publication of the resolution of the council — the publication being required by law—and when any matter of public interest is required to be published officially · in the public press, we think it may be safely held that the public are bound by the notice thereby given.

Moreover, the electors may be presumed to have known the existence of the vacancy.

It will be conclusively presumed, that the electors knew that the law required the vacancy to be filled.

The charter fixes the time of the election, to wit: "the next annual election."

The places for casting the votes at the "annual election," are mentioned in the notice issued by the city clerk.

The relator was declared duly elected to fill the vacancy by the board of city canvassers, and was, therefore, *prima facie*, entitled to the office.

The following cases are respectfully referred to :— 3 *Cal.* 477; 5 *Cal.* 343; 3 *Kern.* 350; 6 *Hill*, 646 ; 11 *Wend.* 611; ·10 *Ind.* 68 ; 15 *Ind.* 327 ; 14 *Barb.* 290 – 292.

2. The second plea alleges, among other things, " that no notice was given of an election to fill said vacancy, to be held on said November 3d, 1863, or at any other time." And the plea concludes : " and of this the said defendant puts himself upon the country."

Demurrer to this plea was filed, and, as cause for demurrer, it was alleged that the defendant, in his plea, offered to put in issue matter not properly issuable, and that the plea ought to have concluded with a verification, and not to the country.

The allegation in the plea was one of new matter. In such case the pleading must conclude with a verification : — 1 *Chit. Pl.* 557; 1 *Johns.* 91.

Concluding to the country obliged the People either to join issue or demur :— 1 *Chit. Pl.* 599 ; 2 *M. & S.* 549.

3. The allegations of the third plea are confined wholly " to so much and such part of said information as sets forth an election held and votes cast to fill the office of city attorney for the term of two years, commencing, according to the city charter, on the second Tuesday of January, 1864."

It is only necessary to say that the information was filed November 30th, 1863. The information does not allege an election for the said term of two years ; but in stating the votes cast, it was stated that a certain number of votes were cast for the defendant for the " long term ;" also, in stating. the result as declared by the canvassers,

it was mentioned that the defendant was declared elected for said "long term."

4. The statute gives the right to file the information without qualification; and, although the term of office has expired, the relator is entitled to a determination of his right to the office when the information was filed.

The relator, if the determination be in his favor, may file a suggestion that he has sustained damages: — § 5297, *Comp. L.* The information alleges that damages had been sustained by the relator. A determination of the right of the party is preliminary to the recovery of damages.

If the defendant be adjudged guilty, a fine may be imposed; § 5311, *Comp. L.* The relator is entitled to recover costs if the defendant is guilty of the usurpation alleged; § 5312, *Comp. L.*

See following cases: — 1 *Wm. Bl.* 93; 2 *M. & S.* 75; 2 *Strange,* 952; *Ibid.* 583; 8 *Wend.* 396.

*L. Bishop,* for respondent :

The office having expired, the proceeding should be dismissed.

The Court can not now enter the appropriate judgment in such a proceeding, which is ouster from the office, or that the defendant is entitled to remain in it: — 3 *Bl. Com.* 263; 4 *Ibid.* 312; 2 *Comp. L.* § 5311; 5 *R. I.* 1 – 7.

The judgment, if one is rendered, must be of the present tense when rendered. See form of judgment in 11 *Mass.* 339.

How can the Court oust the defendant from, or adjudge him entitled to, that which no longer exists?

Judgment of ouster will not be entered, where the respondent has ceased to exercise the duties of the office in question: — 12 *Ohio St.* 130, 136. See also, *Wright,* 231, 237; 17 *Ohio,* 143; 2 *Johns.* 184; 3 *Mass.* 285; 19 *Geo.* 559.

It is true the court in England, as in this State, under

the statute, may impose a fine, as an *incident* to the principal judgment. But where there is no pretence of improper motives, on the part of the defendant, as is the case at bar, the fine is only nominal: — 5 *R. I.* 1, 11.

And, even in such cases, in England, the writ or information will be denied, if the term of office has expired. *Note to* 4 *Q. B.* 648.

The statute has made this a remedial process in favor of the person, other than the defendant, who may be found entitled to the office in question. But how shall the Court adjudge Mr. Speed entitled to an office that no longer exists?

As *incidental* to the principal object of the suit, the relator, if adjudged entitled to the office, might have his damages assessed : and costs may also be given.

But the Court, in prosecutions of this kind, will not entertain, or retain, the case, upon these secondary and incidental grounds, where the principal ground fails : — 4 *East*, 327, 336.

As to the demurrer to the second plea of the respondent.

1. The second plea is a simple negation of facts which are averred or necessarily implied in the information, and there is no one fact thus denied, which is immaterial, upon which an immaterial issue could be formed. The first cause of demurrer, as assigned, is therefore bad.

2. As to the second assigned cause of demurrer: a plea or other pleading, which is a mere negation or contradiction of the pleading to which it is an answer, must conclude as this does, to the country : — *Steph. Pl.* 230, 433.

As to the demurrer to the third plea of the defendant.

There is in the information enough to justify the conclusion that the relator intended, if possible, to weave into it enough to give himself the office of city attorney, not for the term of the vacancy only, but for the regular term of two years.

It was against this singular feature of the information that the third plea of the defendant was aimed.

As to the demurrer of the defendant to the second replication of the People, to the first plea of the defendant.

1. The replication should have concluded to the country. The respondent, in the first place, had averred that there was no notice of any election to fill the vacancy at the general election. This the replication denies, by setting forth what is claimed in legal effect as such notice. There is, therefore, the direct negative and affirmative averment, on the same point. In such cases the conclusion must be to the country: — *Steph. Pl.* 230, 433.

2. This replication is otherwise clearly informal, contradictory and bad. It expressly admits that there was no notice of an election to fill the vacancy in question, and then sets out a notice of an election of city officers, that of attorney included, "whose term of office will commence on the second Tuesday of January, 1864." This is a strange notice for what it is claimed to be; that is to say, a notice is claimed, to fill a vacancy which was to terminate on that same second Tuesday of January, 1864.

We think we might safely rest our case here. But as we are formally called upon to show by what authority we filled the vacancy in question down to the second Tuesday in January, 1864, we will proceed to show that authority.

The record shows that no notice whatever of an election to fill this vacancy was given.

There was no intention on the part of the electors of Detroit to fill the vacancy; and "if the intention of the voters can be ascertained with reasonable certainty," that intent must prevail: — *People v. Bates*, 11 *Mich.* 364, 366, 368; *People v. Cook*, 4 *Seld.* 67, 81; 17 *Ill.* 167; 34 *Barb.* 620; 22 *N. Y.* 309.

It is proper to "look at the number and character of the ballots cast," in order to determine a question of elec-

tion, and by them we may be "forced to the conclusion that there has been a failure to hold an election" for a given office, and that such "office therefore remains vacant": — *People v. Canvassers of Kent Co.*, 11 *Mich.* 112, 113.

The notice set out in the record seems to have been given, "By order of the common council," pursuant to the charter; and the resolution of the council, passed on the 7th day of November, 1863, on the report of the judiciary committee thereof, after this controversy had been raised by the relator, that the respondent was then the "legal incumbent of said office, duly authorized to hold the same and discharge its duties, until the 12th day of January, 1864, when his successor in said office for the next regular two years term thereof will duly qualify, according to section 13, of chapter two, of the charter of said city," shows very clearly what the intent and understanding of that body were in giving the notice of the election, and as to what officers were to be chosen.

To us, it appears simply absurd, that the statement of the vacancy printed among other proceedings of the common council, on the third day of September, 1863, should be urged as actual or constructive notice that an election to fill a vacancy in said office would be held in Detroit on the 3d day of November thereafter.

There being no law authorizing notice of such a vacancy to be thus given to the public, the proceedings of the council thus published were a simple nullity, with reference to such object: — 10 *Ind.* 62, 67.

The respondent was appointed to fill the vacancy on the 1st of September, 1863. He was to hold the office under the charter "until the next annual election": — *S. L.* 1857, *p.* 80, § 26.

Of course, this provision pre-supposes that a regular, valid election to fill the vacancy will be held at such "next annual election."

If such regular election to fill the vacancy should not take place, then, of course, under another provision, the incumbent "would hold his office until his successor would be elected or appointed and qualified, and should enter upon the duties of his office." *S. L.* 1857, *p.* 77, § 13.

Or, if it be said that the appointment of the respondent only continued till the "next annual election," then, there having been no valid election to fill the vacancy, the resolution of the council, before referred to, of November 7, 1863, that the respondent was the legal incumbent of said office, duly authorized, etc., had the effect of a re-appointment of the respondent: — 22 *Barb.* 72.

The relator admits, in the record, that there was no notice given of an election to fill this vacancy; and we contend that, without such notice, no election to fill it, and no votes cast for the purpose of filling it, could be valid.

[In this connection counsel cited and commented on, 15 *Ind.* 327; 3 *Cal.* 477; 14 *Barb.* 259; 2 *Cal.* 135; 6 *Cal.* 26; 8 *Ohio St.* 620; 11 *Cal.* 49; 12 *Cal.* 409; 10 *Ind.* 62; 17 *Ind.* 554.]

Actual, formal notice might not be necessary, if "the people had, in truth, been called upon, and had spoken; and if *no portion* of them failed in knowledge of the pendency of the question, or to exercise their franchise": — 10 *Iowa*, 212; 7 *Iowa*, 186; 9 *Iowa*, 334.

It can not be pretended that the electors of the city generally knew of an election to fill this vacancy. In this respect the case is clearly distinguishable from *People v. Cowles*, 3 *Kern.* 350.

In that case, also, the vacancy occurred less than fifteen days before the general election, in which case no notice at all of the vacancy, "with reference to an election to fill it," was required by law to be given: — *Ibid.* 358, 361.

MANNING J. :

The motion to dismiss the information, for the reason that the term of the office which respondent is charged with having usurped has expired since the filing of the information, must be denied. If the only object of the proceedings was to oust the incumbent, there would be great propriety in granting the motion. But the statute under which the information is filed provides for the imposition of a fine, in the discretion of the Court, and the payment of costs by respondent should he be found guilty of the intrusion: — *Comp. L.* § 5312, 5311. And when the office is claimed by another, the information may be so framed, as in the case before us, as to try the right of such person to the office, who, on obtaining a judgment in his favor, at any time within one year thereafter, may make and file a suggestion that he has sustained damages to a certain amount by reason of the usurpation, and pray judgment therefor against respondent : — *Comp. L.* § § 5293, 5297. And such information may be filed without leave of the Court:— *Comp. L.* § 5291. When it is necessary to obtain leave of the Court to file the information, the Court may, in its discretion, refuse to permit the information to be filed. In the case of *The People v. Sweeting*, 2 *Johns.* 184, the Court refused to give leave because the term of office would expire, and the office be filled by an election, before the proceeding to oust the incumbent could be made effectual. And in *The Commonwealth v. Athearn*, 3 *Mass.* 285, leave was refused on the ground that the term of office would expire before the question could be tried. But in *The People v. Loomis*, 8 *Wend.* 396, the Court refused, under a statute like our own, to dismiss although the term of office had expired.

Before speaking of the pleadings, it will be necessary to refer to the city charter, and to the law of the case.

By the charter an annual city election is required to be held on the first Tuesday after the first Monday of November in each year, at such places in the several wards as shall be designated by an order of the common council at least twenty days previous thereto, notice of which, and of the officers to be elected, and of the time for opening and closing the poll, is required to be given within three days after the date of such order, by the city clerk, by publication in two or more daily papers published in the city: — *Laws* 1857, *p*. 82, § 1. A city attorney is to be elected, and to hold his office for two years: — *Ibid. p*. 74, § 1, *and p*. 77, § 13. And if an office becomes vacant, it may be so declared by the common council: — *Ibid. p*. 80, § 22. And if a vacancy occurs in any elective office, other than Mayor or alderman, the common council are to appoint some person eligible under the charter to serve in such office until the next annual election, when the vacancy is to be filled for the residue of the official term: — *Ibid. p*. 80, § 26. Such are the provisions of the charter bearing on the questions before us.

The common council declared a vacancy in the office of city attorney, and appointed the respondent to fill it. And the information states that the relator at the next annual election thereafter was duly elected to fill the vacancy, &c.

In the notice of election given by the city clerk, no mention whatever was made of the vacancy. Did this omission in the notice vitiate the election of the relator?

There can be no doubt had the notice omitted to state that there was to be an election of an alderman in each of the wards of the city at that election, that such omission would not have rendered void the election of such officers. The statute in this particular is directory merely. It is nevertheless the duty of the city clerk to see that it is carried into effect, and if he should wantonly and corruptly omit to give notice of the officers to be elected,

he may be punished therefor criminally. To go further than this and hold the election void, would place it in the power of the city clerk to defeat the election of any or all city officers to be elected at an annual election. Electors are supposed to know what officers are to be elected at a general election, and, if in doubt, can readily inform themselves. The design of the notice is to remind them of their duty to the public. It is in no way connected with the elector's right to the elective franchise; nor is it a condition precedent to be performed by another to entitle him to exercise the right. There is a material difference, it is said, between an election for a full term and to fill a vacancy. The charter makes none in the case before us, and we can not make any. We know of no rule of construction by which we can hold the notice both necessary and unnecessary; that is, necessary to the validity of the election of some officers to be elected, and not as to others. The alleged difference is, that an elector may not know of the vacancy, while he is presumed to know of the election of officers for a full term. He must however be presumed to have cognizance of the proceedings of the common council, which are published in the official paper of the corporation. And the vacancy was declared by that body, which, at the same time, appointed the respondent to fill it until it should be filled at a general election.

The first plea to the information admits the vacancy, states the appointment of respondent to fill it, by the common council, and says that at the next general election in said city, held on the third day of November, 1863, there was no election to fill the unexpired term. The People reply to this part of the plea, taking issue on the election to fill the vacancy, and conclude to the country. The plea admits the holding of the annual election, but denies it was an election to fill the vacancy. If the views we have expressed are correct, it was an election

to fill the vacancy, as well as for the election of officers
for a new term; and the issue made by the plea and
replication for a jury to try is one of law and not of
fact. We mention this in passing, not that there is any
question in regard to it now before us.

The plea further states, "nor was there any notice
given of such vacancy." The People in their replication
to this part of the plea admit its truth, and set forth in
full a notice given of the city election which makes no
mention of the vacancy; and conclude with a verification.
The respondent demurs, and the People join in the
demurrer. Want of notice we have stated does not vitiate
the election. The plea consequently is bad. So is the
replication, as it tenders an immaterial issue by the new
matter set up in it. On this demurrer there must be judg-
ment for the People, as respondent committed the first
error.

Respondent's second plea, like the first, sets up various
matters as a defense, none of which are material except
the statement that the electors of the city did not vote
to fill the vacancy, and that no ballots were cast for that
purpose. The plea concludes to the country, and is demur-
red to by the People, in which the respondent joins,
because, *first*, it offers to put in issue matter not
properly issuable; and because, *second*, it does not con-
clude with a verification. It is not demurred to for
duplicity. Neither of the objections stated in the demurrer
is well taken. For if there were no votes given at the
election to fill the vacancy, the relator could not have
been elected, and that part of the plea is therefore mate-
rial. And it should not conclude with a verification, as
it denies, or puts in issue, a material allegation in the
information, which states that a large number of ballots
to wit, 2800 in number, were cast for the relator to fill
the vacancy. The issue formed by the information and
plea, is, whether any votes were cast to fill the vacancy

at the election. If there were not, as we have stated, the relator could not have been elected. The information states that there were, and that the relator received the greater number of such votes; both which facts are material to show his title to the office, and both being material, respondent was at liberty to take issue on either of them.

The third plea is clearly bad, as it relates to the election of respondent for the full term, of which no complaint is made in the information.

There must be judgment for the People on the demurrer to the second replication to the first plea, and on the demurrer to the third plea, and for the respondent on the demurrer to the second plea, with leave to the People to withdraw their demurrer to that plea, and add the similiter. Neither party to have costs against the other.

CHRISTIANCY and CAMPBELL JJ. concurred.

MARTIN CH. J. did not sit in this case.