ALLEN C. ADSIT V. GILBERT R. OSMUN, SECRETARY OF
STATE, AND SAME V. THE BOARD OF STATE
CANVASSERS.

[Two cases.]

*Elections—Filling vacancy—Failure to give notice—Constitutional
law.*

1. An unconstitutional law is no law, and in no case can it be
   made a justification in law for any action or non-action.
2. While there may be cases where a person will not be punished
   with costs for not taking action in opposition to a law appear-
   ing upon the statute-books before the same is declared uncon-
   stitutional, when such costs are in the discretion of the court,
   yet no rights can be founded upon such a law; nor can any
   person or persons be deprived of any rights or privileges
   because such a law has been apparently legally enacted, and
   appears in the body of our laws.
3. An election to fill a vacancy, of which no notice is given, and
   which is in fact known to but few of the voters, is void.   But
   though the official notice was not given, or, if given, not in
   the prescribed form, yet if the election has been held, and the
   great body of the voters had notice *in fact* of the vacancy, this,
   coupled with the fact that they are presumed to know that
   the law requires the vacancy to be filled at the next election,
   is sufficient, even though many refrained from voting because
   of a difference of the construction of the law.   Mechem, Pub.
   Off. § 174; *Jones v. Gridley*, 20 Kan. 584; *State v. Skirving*,
   19 Neb. 497; *Foster v. Scarff*, 15 Ohio St. 532; *Com. v. Smith*,
   132 Mass. 289; *Dishon v. Smith*, 10 Iowa, 212.
4. The question to be considered in these cases is whether the
   want of the *statutory* notice has resulted in depriving suffi-
   cient electors of the opportunity of voting to change the result
   of the election; and the election should not be set aside when
   it is apparent that the result would not have been different had
   all the electors voted.

*Mandamus.*   Submitted October 14, 1890, and January
8, 1891.   Granted February 5, 1891.

Relator applied for *mandamus* to compel the Secretary of State to give notice of an election to fill vacancy in the office of judge of the seventeenth judicial circuit, and subsequently applied for such writ to compel the Board of State Canvassers to meet and examine a certain tabulated statement of votes cast for such office, and determine who is elected thereto. The facts are stated in the opinions.

*Allen C. Adsit*, relator, in *pro. per.*

*B. W. Huston*, Attorney General, for respondent Secretary of State.

*A. A. Ellis*, Attorney General, for respondent Board of State Canvassers.

MORSE, J. In the first case above, the relator moved this Court as soon as possible. His application for *mandamus* shows that on September 4, 1890, he was nominated by the Democratic county convention for the county of Kent for the office of circuit judge to fill a vacancy, and that on September 23, 1890, 25 electors of said county requested the Secretary of State, Gilbert R. Osmun, to give the requisite statutory notice of an election to be held on November 4, 1890, to fill said vacancy in the office of circuit judge. The Supreme Court was in vacation in the month of September, and at the first opening of the Court, October 7, 1890, the relator presented his petition, and an order to show cause was granted. This could not be heard until October 14, 1890, at which time, for reasons stated in *People v. Burch*, *ante*, 408, we decided to hold the decision of the motion until the hearing in *People v. Burch*, which was then pending in this Court. Under the opinion filed in that case, the relator was clearly entitled to his writ, and it was the duty of the Secretary of State to have given

notice of the election as requested. But, under the circumstances as shown in *People v. Burch,* we should not have granted costs with the writ, as the Secretary of State was not reprehensible in refusing the relator's request in view of the provisions of the law of 1889, and the questions raised as to the legality of its enactment.

We must now consider the most difficult as well as the most vital point, as it affects the relator, in the whole controversy. In the second case above, of *Allen C. Adsit, Relator, v. Board of State Canvassers, Respondents,* it appears that, acting upon the nomination of the Democratic party, and believing that it was competent for the electors at the general election on November 4, 1890, to elect a successor to Judge Burch under the Constitution and laws of this State, steps were taken by the relator to give as general notice of such election, and his candidacy for circuit judge, as possible, in view of the refusal of the Secretary of State and the sheriff of Kent county to give the statutory notices. The relator's name was placed at the head of the Democratic county ticket upon all the Democratic tickets printed by the Secretary of State for said county of Kent; his name for the office of circuit judge of the seventeenth judicial circuit to fill a vacancy being therefore on the *official* ticket of his party in said county. This official ticket was published in the several Democratic newspapers published in said county, including one published in the Holland language; and in such county the fact of his candidacy for said office was published as a matter of news in the Republican and Independent newspapers, and also the claim of the relator upon what ground he was a candidate, to wit, that the appointment of Judge Burch by the Governor could not in law continue beyond the general election of November 4, 1890; and the proceedings of said relator in the Supreme Court, taken before said election, were also published in

all the newspapers. The relator also caused printed notices, signed by the chairman and secretary of the Democratic county committee, to be posted and circulated in each of the townships and precincts of said county, that an election would be held to supply such vacancy in the office of judge of the seventeenth judicial circuit (Kent county) at the general election to be held on November 4, 1890; and the fact thereby, as it is alleged by relator, that such an election of circuit judge would be held, "became and was notorious in all the election precincts of said circuit."

At said election in said county of Kent, the relator received at every precinct in said county nearly if not the full vote of his party for said office, his total vote in the county being 11,659. The Democratic candidate for Secretary of State received 11,690; Auditor General, 11,699; Member State Board Education, 11,706; State Senator, 11,729; surveyor, 11,693; coroners, 11,695 and 11,693. He received more votes than the following candidates upon his party ticket, to wit, State Treasurer, sheriff, register of deeds, and prosecuting attorney. In the whole county, taking the vote upon surveyor and coroners as a fair index of party strength, he ran about 33 votes behind his ticket. The whole vote on Member of State Board of Education was as follows: Hammond, Democrat, 11,706; Ballou, Republican, 10,061; Scott, Prohibition, 1,601; Powers, Industrial, 85,—total, 23,453. One-half of this would be 11,727, so that the relator received not quite one-half of the full vote of the county cast for the candidates for other offices. But, if the Republicans and Prohibitionists had not supported the same candidate for this office, the relator would undoubtedly have received a plurality of votes, if his vote had not fallen below 11,000; and the probabilities are very strong that if all parties had participated in the election,

and a full vote had been cast, the relator would have been elected, as every candidate upon his party ticket received pluralities ranging from 2,397 upon Congressman down to 344 for register of deeds, the average of pluralities being over 1,500, and no reason is shown why the relator was not an acceptable candidate to the voters of his own party.

The votes cast for the relator were canvassed by the Kent county board of canvassers, and a tabulated statement of the same forwarded to the Secretary of State, as provided by law. The Board of State Canvassers refused to examine this statement, or to declare the result. The relator asks the writ of *mandamus* out of this Court to compel a meeting of the Board of State Canvassers, and directing them to examine such statement of votes, and to make a statement of the whole number of votes given for said office in said county of Kent at such last general election, and deliver the same to the Secretary of State, with the determination of said board as to what person has been, by the greatest number of votes, duly elected to said office indorsed thereon.

As heretofore shown in *People v. Burch,* and in this opinion, the general election of November 4, 1890, was the proper and legal time for electing a successor to Judge Burch, and to fill the unexpired term ending December 31, 1893. If the Secretary of State had issued the notice prescribed by the statute, there could be no doubt as to the legality of the election of the relator as such successor, and he would now be entitled to the office upon qualifying as the law directs. Was this notice necessary? The statutes provide that—

"When a vacancy shall occur in the office of Judge of the Supreme Court, of judge of the circuit court, * *. * 30 days or more before a general election, the Secretary of State shall, at least 20 days before such election,

cause a written notice to be sent to the sheriff of each of the counties within the election district in which such vacancy may occur, which notice shall state in which office the vacancy occurred, and that such vacancy will be supplied at the next general election." How. Stat. § 146.

The sheriff upon receiving such notice is to cause forthwith a like notice in writing to be delivered to the township clerk in each township, and to one of the inspectors of election in each ward in cities, within his county (Id. § 151), and 20 days' notice of the holding of each general election for the choice of county officers, designating the officers to be chosen at such election (Id. § 152).

The authorities are uniform that the neglect of the Secretary of State, or of the sheriff, or of both of them, to give these notices, would not invalidate an election of persons receiving the highest number of votes for any office for which the regular term was by law to be filled at a general election. *Attorney General v. Canvassers*, 64 Mich. 609; *People v. Hartwell*, 12 Id. 508; *People v. Witherell*, 14 Id. 48; 6 Amer. & Eng. Enc. Law, 298, 299, and cases cited; *State v. Bernier*, 38 N. W. Rep. 369 (Minn.); Cooley, Const. Lim. 603; Mechem, Pub. Off. § 173. The notice in such case required by the statute is deemed directory, and not mandatory. The right and duty to hold the election is derived from the law, and not from the notice. The statute makes the time and occasion of the election imperative. Where such a direction is given, it cannot be made nugatory by any failure to give notice. Every one is bound to take notice of what the statute requires. *Attorney General v. Canvassers*, 64 Mich. 611. But where the time and place of the election are not fixed by law, but the election is only to be called, and the time and place to be fixed, by some authority named in the statute, after the happening of some condition precedent, it has

been held that it is essential to the validity of such an election that it be called, and the time and place fixed, by the very agency designated by law, and none other. *Stephens v. People,* 89 Ill. 337.

The authorities are not entirely harmonious in regard to the filling of vacancies. It is said, in Mechem on Public Offices and Officers (section 174), that, where the law requires the vacancy to be filled at the next general election, the time and place of which are fixed by law, no notice is necessary, although the law declares that notice shall be given, specifying the vacancy to be filled; an election at the time and place fixed by law will be valid, although no notice was given; citing *People v. Cowles,* 13 N. Y. 350; *People v. Hartwell,* 12 Mich. 508; *Dishon v. Smith,* 10 Iowa, 212; *State v. Orvis,* 20 Wis. 235; *State v. Goetze,* 22 Id. 363; *State v. Jones,* 19 Ind. 356. Judge Cooley, in his work on Constitutional Limitations, page 603, says:

" Where, however, both the time and the place of an election are prescribed by law, every voter has a right to take notice of the law, and to deposit his ballot at the time and place appointed, notwithstanding the officer, whose duty it is to give notice of the election, has failed in that duty. The notice to be thus given is only additional to that which the statute itself gives, and is prescribed for the purpose of greater publicity; but the right to hold the election comes from statute, and not from the official notice. It has therefore been frequently held that when a vacancy exists in an office which the law requires shall be filled at the next general election, the time and place of which are fixed, and that notice of the general election shall also specify the vacancy to be filled, an election at that time and place to fill the vacancy will be valid, notwithstanding the notice is not given; and such election cannot be defeated by showing that a small portion only of the electors were actually aware of the vacancy, or cast their votes to fill it."

There are, however, many cases opposed to this

doctrine. It is held by these authorities that where there is—

"No notice, either by official proclamation or in fact, and it is obvious that the great body of the electors were misled for want of the official proclamation, its absence becomes such an irregularity as prevents an actual choice by the electors,—prevents an actual 'election,' in the primary sense of that word,—and renders invalid any semblance of an election which may have been attempted by a few, and which must operate, if it be allowed to operate at all, as a surprise and fraud upon the rights of the many." *Foster v. Scarff*, 15 Ohio St. 532.

And in cases where there was no official notice of a vacancy, or that such vacancy would be filled at the general election, and the fact was known to but few of the voters, or there was a doubt as to whether there was a vacancy, and but a small number of the electors voted for any candidate to fill such vacancy, it has been held that the election was invalid. *State v. McKinney*, 25 Wis. 416; *Wood v. Bartling*, 16 Kan. 109; *State v. Good*, 41 N. J. Law, 296; *Beal v. Morton*, 18 Ind. 346; *People v. Crissey*, 91 N. Y. 616; *Toney v. Harris*, 85 Ky. 453 (3 S. W. Rep. 614); *Secord v. Foutch*, 44 Mich. 89.

I think the true doctrine is as laid down in the text of Mechem on Public Offices and Officers, at pages 108, 109, § 174, that an election to fill a vacancy of which no notice was given, and which was in fact known to but few of the voters, is void. But though the official notice was not given, or, if given, not in the prescribed form, yet if the election has been held, and the great body of the voters had notice *in fact* of the vacancy, this, coupled with the fact that they are presumed to know that the law requires the vacancy to be filled at the next election, is sufficient, even though many refrained from voting because of a difference of the construction of the law. See, also, *Jones v. Gridley*, 20 Kan. 584; *State v. Skirving*,

19 Neb. 497 (27 N. W. Rep. 723); *Foster v. Scarff*, 15 Ohio St. 532; *Com. v. Smith*, 132 Mass. 289; *Dishon v. Smith*, 10 Iowa, 212. The question to be considered in these cases is whether the want of the statutory notice has resulted in depriving sufficient electors of the opportunity to exercise their franchise to change the result of the election; and the election should not be set aside when it is apparent that the result would not have been different had all the electors voted.

In the case before us it is evident that all the electors in the county of Kent had nearly, if not quite, as full notice that an election for circuit judge was to take place as if such notice had come through the official statutory notices. It was notorious that the relator was a candidate; that his party had nominated and were supporting him for this office, claiming that, under the Constitution and laws of this State, a vacancy had occurred in this office, which was required to be filled at the election on November 4, 1890. The newspapers were full of his candidacy, and of his attempts to obtain official notice of the election. Every Democratic ticket bore his name for the office, printed by authority. Notices of the election were posted in every voting precinct, unofficial, it is true, but yet bringing the fact home to the electors that a large portion of the electors, comprising one of the principal political parties in the county, were insisting that a vacancy had occurred in the office of such circuit judge; that the law required such vacancy to be filled at that election; and that they were supporting the relator as a candidate for such office. It is not to be inferred from the circumstances surrounding and leading up to this election that any considerable number of the electors of the county of Kent were unaware of the candidacy of relator, or that an election was being held to fill an alleged vacancy in the office of circuit judge. On the

contrary, it clearly appears that the other political parties, and the voters of such parties, refrained from taking part in such election under the belief that no vacancy existed, and that Act No. 97, Laws of 1889, extending the term of the respondent until December 31, 1893, was constitutional and valid.

Upon the presentation and argument of this application for *mandamus*, I was strongly impressed with the idea that such electors were justified in relying upon a statute of the State, which had not been declared invalid, and in refraining from voting for a candidate for this office, and that therefore the election could not be a legal one without the official notice provided by the statute. But on consideration, and a review of the authorities, I have arrived at a different conclusion.

An unconstitutional law is no law, and in no case can it be made a justification in law for any action or non-action. The maxim that all men are presumed to know the law must prevail. And, while there may be cases where a person will not be punished with costs for not taking action in opposition to a law appearing upon the statute-books before the same is declared unconstitutional, when such costs are in the discretion of the court, yet no rights can be founded upon such a law; nor can any person or persons be deprived of any rights or privileges because such a law has been apparently legally enacted, and appears in the body of our laws. If, in the present case, but few had voted, and it appeared that the fact of the existence of a vacancy, or that this election was the proper and legal time to fill it, was known to but a small portion of the electors, so that holding the election valid would seem to be a disfranchisement of a large majority of the electors, I should, under the rule heretofore quoted from Mechem on Public Offices and Officers, be constrained to hold that no legal election had occurred

for this office. And this, I think, would be in accord-
ance with the ruling of this Court in *Secord v. Foutch,*
44 Mich. 91, where Judge CAMPBELL says:

"In the present case it is entirely clear that there
could have been no general idea that there was to be an
election for judge of probate, for there were no opposi-
tion candidates, and the number of votes cast is con-
clusive of the general understanding.   *   *   *   It is
a necessary safeguard to popular elections that the people
be informed what officers they are to vote for. They
may be expected to know what elections are to be made
at the regular general elections, and as to those in
ordinary cases it might be dangerous to allow a failure to
give notice to avoid the election. This would enable the
popular will to be defeated by the misconduct of minis-
terial officers. But there can be no such knowledge
assumed concerning vacancies in office, *and, without some
distinct and public notice of some sort,* such an election
could hardly fail to be capable of the worst kind of fraud
and trickery."

But this is not such a case, and seems to me to be
governed by the case of *People v. Hartwell,* 12 Mich. 508.
The Constitution and our laws plainly provide that a
vacancy existed in this office, and that the election of
November 4, 1890, was the proper time to fill it. The
Secretary of State gave notice as he ought to have done
of an election at that date of a justice of the Supreme
Court to fill vacancy, and no one will contend that if he
had failed to do so it would have invalidated the election,
providing a candidate had been nominated and voted for
by a plurality of the people, considered in reference to
the relative strength of the four political parties in this
State. In other words, the Secretary of State, a minis-
terial officer, could not have prevented the election of a
Justice of the Supreme Court by failing to give the
notice required by the statute, and it would have been
entirely immaterial upon what ground he based his
refusal to issue such notice. The same section and article

of the Constitution that governs in the case of election to fill a vacancy in the office of Justice of the Supreme Court also expressly regulates and controls the election to fill a vacancy in the office of circuit judge.    Article 6, § 14.  And by necessary implication this section has been held to preclude the appointment by the Governor to fill a vacancy in either of these offices beyond the next general election.    The successor to such appointee, when elected, could not "hold his office for the residue of the unexpired term," if the Governor could by appointment fill the vacancy for the unexpired term regardless of intervening general elections.    *People v. Lord*, 9 Mich. 227 ; *People v. Burch, ante,* 408.    Neither can the Secretary of State, by refusing notice, nor a minority party, by refusing to nominate a candidate or to vote, prevent the holding of an election, when the Constitution is plain that it should be held.

The reason why the notice is not given, or why those not voting abstain from exercising their privileges as electors, is unimportant, except as it may go to the question whether or not there was such a public notice of the election as to bring home to the majority of the electors the fact that such an election was being held. Otherwise it would be in the power of a purely ministerial officer, in concert with a minority party, to assume either that a law was constitutional or unconstitutional, as the case might be, to suit their purposes, and thereby, by neglecting to give notice and refusing to vote, to defeat the will of the majority, and keep an office filled by one who the law declares should have a successor elected by the will of the majority, or, in this State, the plurality, of the people.    This cannot be permitted, as is clearly shown in *People v. Hartwell,* 12 Mich. at page 523.

It follows that the relator is entitled to the office of

circuit judge of the county of Kent, in the place and stead and ·as the successor of Marsden C. Burch, the present incumbent, and that the writ of *mandamus* should issue as prayed in the case of *Allen C. Adsit, Relator, v. State Board of Canvassers, Respondents.*

CHAMPLIN, C. J., and McGRATH, J., concurred with MORSE, J.

LONG, J. I concur in the result reached by my Brother MORSE in this case, but I do not agree with him in some of the reasons given by which he reached the conclusion that the relator is duly elected to the office of circuit judge of Kent county.

It is true that the authorities are uniform in holding that the neglect of the Secretary of State, or of the sheriff, or both, to give notice, would not invalidate an election of persons receiving the highest number of votes for any office for .which the regular term was by law to be filled at a general election. But where the time and place of the election are not fixed by the law, and the election is only to be called, and the time and place to be fixed, by some authority named in the statute, after the happening of some condition precedent, it is held that it is essential to the validity of such an election that it be called, and the time and place fixed, by the very agency designated by the statute, and none other. *Stephens v. People,* 89 Ill. 337. I should rest my conclusions upon this doctrine, and hold the relator not duly elected to the office of circuit judge, were there not certain facts patent in this particular case which should bring it out of that rule, and from which I am satisfied that the electors of Kent county have not in any manner been defrauded. The statute itself provides that the Governor may appoint to fill the vacancy until the spring election of 1893. This was passed by the Legislature and

.approved by the Governor. Acting under the authority so conferred, the Governor made the appointment to the full end of the term, thus giving construction to the statute that it did so confer upon him the power to make the appointment for the full period of time. No one questioned this right, so far as appears by this record, until just before the fall election of 1890. The Secretary of State was called upon in September, 1890, to give notice of this election, and for the first time the question was agitated as to the power of the Governor to make the appointment for the full time. This was, however, settled by the Secretary of State, the head of one of the State departments, giving construction to the statute as it had before that time been construed by the Legislature and the Governor. The relator then came to this Court for *mandamus* to compel the Secretary of State to give the notice, the claim being made that the Governor had no power to appoint beyond the next general election. We withheld our opinion upon the questions raised in that proceeding, for the reason that we were uncertain whether the act creating an additional judge in that circuit had properly passed both branches of the Legislature. Upon a full argument of that question, we have disposed of that part of the case in *People v. Burch, ante*, 408, at the present term of this Court.

The relator, having been nominated by his party in Kent county, and having done all in his power to procure the publication of notice by the proper authorities that an election would be held for circuit judge in that county, himself procured to be published the following notice:

" ELECTION NOTICE.

" *To the Electors of the 17th Judicial Circuit:*

" WHEREAS, by Act No. 97, Public Acts of 1889, the

84 MICH.—28.

office of additional judge for the 17th judicial circuit was created, and it was further provided that said office should be vacant from the time said act should take effect, which was May 17, 1889, and authorized the Governor to fill said vacancy by appointment for the unexpired term, ending December 31, 1893; and

"WHEREAS, the Governor appointed Hon. Marsden C. Burch to fill the vacancy so created by said act, who now holds said office by virtue of said appointment; and

"WHEREAS, it is provided by the Constitution of the State of Michigan, section 14, article 6, that 'when a vacancy occurs in the office of judge of the  *  *  * circuit  *  *  *  court, it shall be filled by appointment of the Governor, which shall continue until a successor is elected and qualified; *when elected, such successor shall hold his office for the residue of the unexpired term'*; and

"WHEREAS, the Secretary of State, whose duty it is to give notice of such election, has been requested to give the same, and refused to do so:

"Now, therefore, the undersigned hereby give notice that a vacancy in the office of judge of the 17th judicial circuit exists, which should be supplied at the next general election to be held in the State of Michigan on the 4th day of November, 1890, and, notwithstanding the refusal of the Secretary of State to give notice thereof, an election will be held on said 4th day of November, 1890, in said 17th judicial circuit, to supply said vacancy.

"*Dated, Grand Rapids, Mich., October 28, 1890.*
          "L. E. CARROLL,
               "Chairman Dem. County Committee.
"JOHN J. BELKNAP, Secretary."

These notices were posted in all the townships, wards, and voting precincts in said county some time prior to the day of election. They were signed by the chairman and secretary of the Democratic county committee, and the proclamation was thus made that it was claimed that a vacancy existed in the office of circuit judge in that county, and the voters were called upon to vote for a candidate to fill the office. It appears also that the matter was canvassed by the county papers, and appar-

ently as great publicity was given to the fact as any notice which the Secretary of State or the sheriff might have given; but the notice was not official, and the other political parties in that county, from the fact that they made no nominations for that office, presumably regarded the office as one already filled under the law, and that no vacancy existed to be filled at that election. The law upon its face, and the action of the Governor in making the appointment of Judge Burch under it, undoubtedly led the other political parties to believe that no such vacancy existed, and, therefore, no nominations need be made for that place. The other political parties had full tickets in the field except for this office. They looked upon the face of the law, and interpreted it from its reading, and from the action of the Governor and Secretary of State, instead of a comparison with the Constitution.

It is said, however, that all parties must be presumed to know that the law was unconstitutional in so far as it attempted to confer upon the Governor the power to appoint beyond the next general election; that an unconstitutional law is no law; and that, by the plain terms of the Constitution, the people were advised that a vacancy existed at the first general election after the appointment was made. There would be much force in this proposition if an attempt were made to uphold an act done or right claimed to have been acquired under the unconstitutional law, for the reason that every one who is competent to act for himself is presumed to know the law, and ignorance of the law is no excuse or justification. But the very ground upon which the notice becomes necessary to a valid election is that the law does not fix the time or place when the election is to be held, and the provision of the Constitution upon which the action is based does not so fix and determine it. If there were

no other considerations in the case, I should unhesitatingly hold that the election was absolutely void, as a fraud upon the electors of that county; that one party could not put a candidate in nomination for such an important office on the claim that a vacancy existed when no such vacancy appeared upon the face of the statute, and without any published notice from the public officers whose duty it is under the statute to give such notice, and, upon a few votes being cast in favor of that candidate, have him foisted upon the people as the one legally entitled to all the privileges and emoluments of the place.

But there are other considerations which must have weight in determining whether the people have been defrauded. These notices were not only posted by Mr. Adsit and discussed by the newspapers throughout the county, being notice of the claim made to the voters, but the Democratic ticket was printed under the authority of the Secretary of State, containing the name of Allen C. Adsit as a candidate for the office of circuit judge of the seventeenth judicial circuit. These tickets were placed at every polling place in the county. At the close of the election these votes were counted by the inspectors of election, and returned to the board of county canvassers. From this tabulation it appears that the whole number of votes cast in that county for the office of Governor was 23,384, and for the general State officers, 23,435, thus showing the number of electors of all political parties appearing and voting at that election to have been at the utmost 23,435, as the tabulated statement of the votes cast for the various county officers shows about the same vote. From the tabulated statement it also appears that the relator had votes cast for him for that office about equal to any candidate running upon the Democratic ticket from Governor to county surveyor, who

had pluralities ranging from 344 to 2,397, and nearly every candidate on the Democratic ticket received pluralities of over 1,600. The relator received for the office of circuit judge 11,659 votes; the Democratic candidate for Governor received 11,833; the Democratic candidates for the various State offices received from 11,519 to 11,781 votes each; and the Democratic candidates for the various county offices received from 11,062 to 11,935 votes. It is therefore fair to presume that, had the other three political parties made nominations for this office, the vote cast thereon would not have been to exceed the highest vote cast by each of such parties for the other candidates, thus giving to the relator a plurality of all the votes cast for that office of from 1,600 to 2,000. There were three other regular tickets in the field. The highest vote given for any Republican candidate on the State ticket in that county was 10,231. The average vote for all candidates, however, was about 10,100. The highest vote given for any candidate on the Prohibition State ticket was 1,694, the average being about 1,600. The highest vote given for any candidate on the Industrial State ticket was 86, that being about the average. The highest vote given for any candidate on the Democratic State ticket was 11,833, the average being about 11,700.

It would not be contended by any one, however partisan, that had all the political parties made nominations for that office, and presented their tickets with the names of candidates for that office printed thereon, it would, under such circumstances, be the duty of the Court to declare the election void for the want of the statutory notice, as the only function of the statutory notice is to give publicity to the fact from official sources that an election is to be held, so that a fair election may be had, and that the will of the electors may not be

defeated. Under the statutes of this State, those, and those only, who receive the greatest number of votes cast for any office are entitled to such office. It is idle to indulge in presumptions which the facts do not warrant; but, taking the facts here shown, the mind is led inevitably to the conclusion that, had the other political parties named candidates for that office, the result must have been that Mr. Adsit would have been elected by a plurality of over 1,600. It appears to me that the will of the electors of Kent county would be defeated under these circumstances to hold the election of the relator void. He had done all that could be done to have the statutory notice given. Failing in this, he took steps to give such notice as was possible to all the electors of the county that such election would be held. This, as has been seen, would have been wholly ineffectual, did it not appear that the necessary vote was actually cast to give him the greatest number of votes had other candidates been presented. It seems to me that any other ruling would be contrary to common sense, and an injustice not only to the relator, but to the people of Kent county, and cast upon the people there the burden of another election.

For these reasons I concur in the result.

GRANT, J., (*dissenting*). I cannot concur with my brethren in the conclusion reached by them in these cases. I do not think that there was an election for the office of circuit judge in Kent county at the last November election, within the spirit and meaning of our Constitution and laws.

It is undoubtedly the law that where the election is a general one, and the officers are to be elected for the full and regular term, the failure to give notice will not avoid the election. This is the well-recognized rule of

nearly all the authorities. But when vacancies are to be filled, and no notice of the election has been given, the authorities are divided, and, as a rule, each case seems to have been decided upon its own peculiar facts. It may be safe to say that the leading idea in these cases is that where it is evident there has been a fair expression of the popular will, and a general understanding that there was a vacancy, and that an election was to be held to fill it, the elections have been held valid, otherwise void. In the case at bar, there could have been no general understanding that there was a vacancy to be filled. No such understanding can, in my judgment, exist where the statute law upon its face expressly says there is no vacancy, and where a suit is pending in a court of last resort to test a question. Under these circumstances it cannot be so plain a question that courts have the right to say that there was such a general understanding of a vacancy to be filled as to dispense with notice by the proper authorities.

The case mainly relied upon in this State to sustain relator's position is the case of *People v. Hartwell*, 12 Mich. 508, but the facts in that case are so widely different from the one at bar as in my judgment to render it no authority here, and to render the principles there laid down entirely inapplicable to this case. In that case there was a vacancy in the office of city attorney, who was elected, and under the law was to hold his office for two years. The charter expressly provided, in case of vacancy in that office, that the common council were authorized to appoint and fill the vacancy until the next annual election. The incumbent had removed from the city, and the common council, by resolution, declared a vacancy in the office, and that resolution was published in the official paper of the city. By the same resolution declaring a vacancy, the respondent was appointed to fill

it until a general election. There was, therefore, in that case, an actual vacancy, not only by the express terms of the charter itself, but by the solemn declaration of the council, the governing body of the city, which declaration was published in its proceedings. That was a general election, and the Court say:

"Electors are supposed to know what officers are to be elected at a general election, and if in doubt can readily inform themselves."

Of course any voter could in that case very readily have determined for himself the question, and would have found that there was a vacancy, and that the statute law expressly provided that it should be filled at the then coming election. If a voter, in the case at bar, had attempted to ascertain whether or not there was a vacancy, what would he have found to enlighten him and to guide him in his investigation to a conclusion? He would have found a law providing for an additional circuit judge for the seventeenth judicial circuit, expressly declaring a vacancy in the office, and authorizing the Governor to fill it by appointment until the general election of 1893, which was the time for the next general election for circuit judges after the law was enacted. Examining further, he would have found that this law was unanimously passed by both the Senate and House of Representatives; that it was approved by the Governor; that the Governor had filled the vacancy by appointment; that on October 7, 1890, the law department of the State had commenced proceedings in this Court to test the validity of the entire act, claiming that it was not constitutionally passed; that the Secretary of State had previously declined to find that there was a vacancy, and to issue a notice of election to fill it; that on the same day the relator had filed his petition in this Court to compel the Secretary of State to issue a notice of election;

that on October 14 this Court announced that it would not then decide the question, that there was not sufficient time for notice to be then given according to law, and that further time for consideration would be taken as to the constitutionality of the law. *He would further have found that there had been no judicial or official intimation whatever that a vacancy existed.* Under those circumstances, can it be said that there was a general knowledge that there was a vacancy, and that an election could legally be held?

I do not think the people are called upon to determine constitutional questions of this character. The presumption is always in favor of the constitutionality of a law, and that presumption exists until the courts have declared it otherwise. No one would seriously contend that the Secretary of State should assume the function of declaring such a law unconstitutional, and act accordingly. He did what was clearly his duty to do in acting upon the assumption of its constitutionality, and leaving other parties to take the proper steps to test it.

Three out of the four political parties in the field made no nomination for that office, evidently assuming that the law was constitutional, and that there was no vacancy. One party nominated relator, who received a very large number of votes. Had there been knowledge of a vacancy and notice of an election, or had there been official notice of the election, the other political parties would undoubtedly have made nominations for the office. Had they done so, it is entirely problematical whether relator would have received a plurality of the votes cast. I do not think it is the province of this Court to say that such would have been the result, and the relator would have been elected in any event. Had there been any other candidate in the field for whom votes were cast, the conclusion of my brethren in this respect might

be natural; but when three out of four political parties have chosen to recognize an express provision of law as valid and constitutional, and have refrained from acting until the Court, the proper tribunal, have decided the question, I cannot hold the election to be valid, where, in the absence of all official notice, but one man has been voted for, and but one man was in the field. Upon what principle can we assume that he would have been elected if the other political parties had nominated one or more candidates? It is true that the relator's political party had a very large plurality, but can we say it was so large that the electors would in any event have elected him to the office of circuit judge, if the other parties had united upon one candidate, or had each nominated a separate one? We might speculate upon the result, but speculation is not the province of this Court. Unless we can say *with certainty* that the result would not have been different, we have no right, in my judgment, to sustain the election upon the ground that the will of the people has been expressed. Relator did not receive one-half of the votes cast. We cannot tell whether in case of opposition he would have received all his present vote, nor whether he would have been opposed by one or more candidates. No one can say more than that it is probable he would have been elected; but is that enough to sustain an election otherwise void? Such an election cannot be called an expression of the popular will, and is not in accord with the spirit and genius of republican government.

The questions of the constitutionality of the act were grave and important. Members of the legal profession differed upon them, and no one could have foreseen what the decision of this Court would be. I do not think an election under those circumstances can be sustained as valid. Under such conditions, an election can only be

sustained when there has been a general belief and acquiescence on the part of the people that it was unconstitutional, that a vacancy existed, and that an election was to be held to fill it, and where there has been a general participation in the election. I do not think a single authority can be found sustaining an election as valid under the facts of this case, or any similar to them, nor do I think that the principles laid down by any of the authorities will sustain it.

This case is, in my judgment, clearly within the reasoning of this Court in *Secord v. Foutch,* 44 Mich. 91, where it is said:

"It is a necessary safeguard to popular elections that the people be informed what officers they are to vote for. They may be expected to know what elections are to be made at the regular general elections, and as to those in ordinary cases it might be dangerous to allow a failure to give notice to avoid the election.    *    *    *    But there can be no such knowledge assumed concerning vacancies in office, and, without some distinct and public notice of some sort, such an election could hardly fail to be capable of the worst kind of fraud and trickery."

It is not enough that one man or one party assume to give notice that they will vote for a man for an office. This is no evidence of a vacancy, and in this case had no bearing whatever upon the question of vacancy. If there was a general knowledge that there was a vacancy, and that there would be an election to fill it, it is of no legal consequence whether a minority or majority party nominate a candidate, nor whether he receives few or many votes. When it is understood and known that an office is to be filled by election at the election to be held, it is of no consequence whatever whether there be one or many candidates, or whether there be few or many votes cast. The electors have then had ample opportunity to exercise their rights, and are foreclosed by the result.

The relator cites *People v. Cowles,* 13 N. Y. 350. The force of that as an authority is weakened by the fact that the conclusion was reached by a divided court of five to three, but the rule there adopted by a majority of the court can safely be adopted in this case, without in the least affecting the question. One of the justices of the supreme court died October 23, previous to the general election of the judges on the ensuing 6th of November. No notice was given of the election. The time within which the Secretary of State should have given notice had elapsed before October 23. The party conventions had been held and nominations made. After the death of the justice, the conventions reassembled, and each nominated a man to fill the vacancy. Fifty thousand votes were cast. No question was raised as to the fairness of the election, which was generally participated in by the people. The sole point in issue was whether the election was invalid for the reason that no official notice had been given, and a vacancy had occurred after the time had expired within which notice could have been given. I call attention to the reasoning of the dissenting opinion, and quote with approval the following:

"Notice to the electors lies at the foundation of any popular elective system. The elector cannot act through the ballot without notice that a vacancy exists to be filled. Necessity and sound policy demand that every elector shall have both the knowledge and the opportunity to enable him to exercise the elective right deliberately and intelligently. In our elective system the duty of giving notice is devolved upon the secretary of state. The legislature have wisely provided that the notice shall be given by this officer within a time, and in a way, calculated to give the fullest notice to the electors. It may be that, under this statute regulation, the omission to give the required notice of an election of a judge for a regular term would or ought not to vitiate the election. The elector should be presumed to know the law, and consequently at what period the regular

term of the public officers to be voted for will expire, and be prepared to act accordingly; but there can be no such presumption when the election is to fill a vacancy. I believe that no case can be found holding that notice to the electors of the existence of a vacancy, and calling on them to fill it, is not essential to give validity to the meeting of the electoral body to discharge the special duty. Certainly it could rest on no principle or sound rule of governmental policy. In the nature of things, notice to the elector that a vacancy exists, and calling on him to fill it, is an essential characteristic of a popular election; and public policy and safety require that it should be given in such form as to reach every elector who has the duty to discharge. Notice, therefore, being an essential element of an election to fill a vacancy, whether we regard the election at which the relator claims to have received a plurality of votes held in pursuance of the constitution or the law, it was equally invalid."

In the absence of the statutory notice required to be given, it must be conceded that something must exist as its equivalent. That something in this case must be—

1. The public assertion of the relator and his friends; and—
2. The action of the convention of his party in placing him in nomination, and the publication thereof in the newspapers of the circuit.

I can find no authority to sustain the position that the existence of either one or both of these constitutes such knowledge of a vacancy and notice of an election as must compel electors to take notice of them, and especially where the fact of a vacancy depends upon a construction of the Constitution. They are unofficial acts, binding upon no one. Under the theory of the relator, the convention of one political party can compel the people at large to adopt at their peril the construction of the Constitution and laws governing elections which the members of that convention see fit to place upon them. The people have a right to rest and act upon the constitu-

tionality of such laws until the courts have declared them void. Any rule that will disfranchise those who have so acted is, in my judgment, unsound in policy, unsupported by authority, and not the law. When the people gener-erally have acted upon and acquiesced in a belief in the unconstitutionality of the act by participating generally in the election, then, and then only, may the election be held valid. No such claim can be successfully maintained in this case, unless we are prepared to hold that the action of a convention of one party represents the people, and is binding upon them. Does such an election satisfy the theory of popular elections where the members of three out of four political parties, and more than half of the electors, have refrained from making nominations, and from voting, in the honest and reasonable belief that no vacancy exists?

The most careful investigation ⊥ have been able to make leads me to the following conclusions:

1. Where the statute law creates a new or additional office, and by its terms declares the office vacant, and provides for filling it by appointment until the next elec-tion at which officers for full terms are to be elected, and the office is so filled, and there is no official notice of a vacancy or of an election to fill it, there is no such knowledge of a vacancy among the people as will justify an election in the absence of a general participation in it by the people.

2. When a suit is pending in the proper court to test the validity of the act and the question of a vacancy, the people cannot be held to knowledge of a vacancy until after the decision of the court.

3. A nomination by only one political party of four, and the fact that the members of that party generally voted for the nominee, are not a general participation by the people in the election, nor a general acquiescence in

the belief that there is a vacancy, notwithstanding the fact that such political party had a plurality of the votes cast.

4. Such an election cannot be held to have expressed that deliberate will and choice of the people necessary to sustain popular elections.

5. The relator was not, therefore, elected. No injustice or inconvenience can result from a denial of the writ. An election for this office can be held at the coming spring election, about two months hence, when the people can have a full and fair opportunity to nominate candidates, and elect a man of their choice.

The writ should be denied.