## M. M. STEPHENS

*v.*

### THE PEOPLE *ex rel.* James J. Rafter *et al.*

|     |     |
| --- | --- |
| 89  | 337 |
| 132 | 582 |
| 89  | 337 |
| 147 | 268 |
| 89  | 337 |
| 196 | ¹316 |
| 196 | ²317 |

1. ELECTION—*must be held at proper time and place.* It is essential to the validity of an election that it be held at the time and in the place provided by law.

2. Where the time and place of an election are fixed by law, it has been held that an omission to give the proper notice of the election will not vitiate an election held on the day appointed by the law; but where the law fixes no time or place of holding the same, leaving that to be determined by some authority named in the statute after the happening of some condition precedent, it is essential to the validity of the election that it be called, and the time and place thereof fixed, by the very agency designated by law, and none other.

3. SAME—*must be ordered by proper authority when not fixed by law. Under the law for the incorporation of cities and villages,* that on a petition of one-eighth of the legal voters of a city, the mayor and city council shall submit the question of incorporation under the general law to a vote, and appoint a time and place or places at which such vote shall be taken, and designate the persons to act as judges at such election: *Held,* that the mayor alone has no

22—89 ILL.

right to call such election, although the councilmen may neglect their duty. The remedy is by *mandamus* against them for any unreasonable non-performance of duty in this respect.

4. SAME—*when void can not be ratified.* Where an election, to determine whether a city will become incorporated under the general law, has been called by the mayor alone, without the consent of the council, and results in favor of incorporating under such law, a subsequent ratification by the council in canvassing the votes and passing a resolution approving the action of the mayor in giving notice of the first annual election under the general law, and the registry by the Secretary of State of the city as organized under such law, will not cure the defective call and ratify the election held under it. The election being void is incapable of being ratified.

5. SAME—*remedy.* The right given by statute to contest an election for the incorporation of a city, under the general law, does not operate to prevent the remedy by *quo warranto* against officers elected after such election, when such election is void for not being called according to law.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an information, in the nature of a *quo warranto*, against the defendant, M. M. Stephens, jointly with seven other persons, as the acting aldermen of the city of East St. Louis, filed in the circuit court of St. Clair county on the 6th day of May, 1878; the relators, six in number, being aldermen elected under and in pursuance of the special charter and ordinances of such city. After the filing of a general demurrer, the information was dismissed as to all the other seven defendants, and the remaining defendant, M. M. Stephens, filed his plea, to which a general demurrer was sustained *pro forma*, and he standing by his plea, the court rendered judgment upon the demurrer and a judgment of ouster against him, from which he appeals to this court.

The plea, in substance, sets up, that on the 16th day of September, 1877, the city of East St. Louis was a municipal corporation of this State, under an act entitled, "An act to reduce the charter of East St. Louis, and the several acts amendatory thereto, into one act, and to revise the same," approved and in force March 26, 1869; that the city was divided into four wards, and had two councilmen from each ward, and that

John B. Bowman was mayor of the city; that afterward, on the 17th day of September, 1877, there was presented to the mayor and council of said city, then in session, a petition of more than one-eighth of the legal voters of the city voting at the last preceding municipal election, to submit the question as to whether said city should become incorporated under the general law, viz: "An act to provide for the incorporation of cities and villages," approved April 10, 1872; that five of the councilmen, naming them, and composing the relators except one, wrongfully, fraudently, and for the purpose of perpetuating their own power, and with intent to thwart the wishes of the legal voters of the city, wholly neglected and refused to perform their duty to submit the question of incorporating the city under the general law to the legal voters of the city; and that, thereupon and afterward, on the 12th day of December, 1877, John B. Bowman, the mayor of said city, published in a newspaper within the city a notice of an election to be held under the said law of 1872, wherein he appointed the 15th day of January, 1878, as the time when, and also the places in said city where, a vote might be taken upon the question of incorporation under said act of 1872, and also designated the persons who should act as judges of the election; that on the said 15th day of January, 1878, such election was held at the places appointed in the notice, at which there was cast a majority of seventy-one votes "for city organization under general law;" that of said vote returns were made by the judges of the election to the city council, and a canvass thereof was made at a meeting of the council on the 22d day of January, 1878, and the same was entered upon the records of the city; and it is averred that thereby, to-wit, by said majority of votes cast "for city organization under general law," said city became organized under the general law of 1872, and that the election has not been contested under section 117, chapter 46, Revised Statutes 1874, or in any other manner; that five of the eight councilmen of the city at the time, three of whom are of the number of the

present relators, voted at and took an active part in the election; that afterwards, and within three months after the election, said city of East St. Louis was duly entered and registered by the Secretary of State of Illinois in the records of his office, in pursuance of the provisions of said act of 1872, as a city organized under that act.

The plea further avers, that the city council having neglected and refused to re-divide the city into wards according to law, and to designate the places at which the next annual election should be held in the city, and to appoint the judges and clerks thereof, and to cause notice thereof to be given and of the officers to be elected, thereupon John B. Bowman, mayor of the city, gave twenty days' notice, by publication in the East St. Louis *Gazette,* a newspaper in such city, that the first general election for city officers, under the general law of 1872 would be held on the third Tuesday, the 16th day of April, 1878, for the election of two aldermen from each ward, a city clerk, a city attorney and a city treasurer, in and by which notice the mayor, after reciting the neglect and refusal of the city council in that behalf, himself designated the places in which the election should be held, and appointed the judges and clerks thereof; that at a meeting of the city council, held on April 11, 1878, the mayor laid before it a copy of said election notice, and the council passed a resolution, "that the action of the mayor in giving notice of the first annual election to be held in this city under the general law of 1872, for the election of city officers, to-wit, on the 16th of April, 1878, be and is hereby approved;" that the last mentioned election was held accordingly, at which the defendant was elected one of the aldermen in and for the fourth ward of the city, and afterward qualified, by virtue of all which he entered into the office of alderman, and claims the right to exercise the powers and perform the duties thereof.

The provision of law in regard to becoming incorporated under the general law of 1872, entitled "An act to provide for the incorporation of cities and villages," is contained in

the first section of that act, as follows: "That any city now existing in this State may become incorporated under this act in the manner following: Whenever one-eighth of the legal voters of such city voting at the last preceding municipal election shall petition the mayor and council thereof to submit the question as to whether such city shall become incorporated under this act to a vote of the electors in such city, it shall be the duty of such mayor and council to submit such question accordingly, and to appoint a time and place or places at which such vote may be taken, and to designate the persons who shall act as judges at such election. The mayor of such city shall give at least thirty days' notice of such election," etc.

As respects the annual election under the general law of 1872, it is provided: "A general election for city officers shall be held on the third Tuesday of April of each year."

"The city council shall designate the place or places in which the election shall be held, and appoint the judges and clerks thereof, and cause notice, etc., of the time, places of election, and of the officers to be elected, for at least twenty days prior to such election." Secs. 48 and 56.

Messrs. WILDERMAN & HAMILL, Mr. R. A. HALBERT, and Mr. L. H. HITE, for the appellant.

Messrs. G. & G. A. KŒRNER, and Mr. M. MILLARD, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The defendant's claim of title to the office of alderman is by virtue of the election held on the 16th day of April, 1878. It was only under the provisions of the general law of 1872, entitled "An act to provide for the incorporation of cities and villages," that a legal election could be held on that day, or that there was any office of alderman to be filled at that time.

Under the prior special charter of the city of East St. Louis, the first Tuesday of April, 1878, was the day of election, and the offices of aldermen were full, so that, unless the special

city charter had become supplanted, and the general law of 1872 was adopted by the vote of the electors of the city taken at the election held on the 15th day of January, 1878, the election on the 16th day of April, 1878, was without warrant of law, and defendant can derive no title thereunder.

For the determination of this case, we need but to consider the question of the validity of that election held on the 15th day of January, 1878, upon the subject of becoming incorporated under the general law of 1872. The objection taken thereto is, that the election was not ordered by the proper authority. The provision of the statute is, that the mayor and council of the city shall submit the question to a vote of the electors in the city, and appoint a time and place or places at which the vote may be taken, and designate the persons who shall act as judges at the election. But here, the mayor, alone, without any order, consent or authority of the council, did all these acts. It is needless to attempt to show that the mayor is not the same authority as the mayor and council. They are evidently different authorities. Power was given to the mayor and council, and to them alone, to call the election. The call of the election by the mayor alone was by an unauthorized person.

It is, of course, essential to the validity of an election, that it be held at the time, and in the place provided by law. McCrary on Elections, § 109. When the time and place of an election are fixed by law, it has been held that an omission to give the notice directed of the election will not vitiate an election held on the day appointed by law. But where the time and place of an election are not fixed by law, as in the present case, but the election is only to be called and the time and place to be fixed by some authority named in the statute, after the happening of some condition precedent, we regard it as essential to the validity of such an election that it be called, and the time and place thereof fixed, by the very agency designated by law, and none other. This court has repeatedly so held, and we consider former decisions of this court as entirely covering

the question involved and determining the invalidity of this election, as not having been called by lawful authority.

In *Clarke* v. *Board of Supervisors, etc.*, 27 Ill. 310, it was said: "If an election were held without warrant of law, or if it were ordered by a person or tribunal having no authority, there could be no doubt that the whole proceeding would be absolutely void. Such an election, and every subsequent step, would be unauthorized and void, and therefore incapable of ratification by the county authorities." In *Marshall County* v. *Cook*, 38 Ill. 44, where, in the case of an election to ascertain whether a county would make a subscription to the stock of a railroad company, the statute authorized the board of supervisors of the county to call the election, and it was called by the county court, it was held that the election so called was without authority of law, and that a subscription to the stock of a railroad company, and bonds issued thereon by the board of supervisors, in pursuance of such an election, were absolutely void. In *Force* v. *Town of Batavia*, 61 Ill. 99, a case of a similar election in a town, where, upon the application of any fifty voters of a town, the statute made it the duty of the clerk of the town to call the election, it was held, that an election under the provisions of the act, called by the supervisor of the town, was void,—that the town clerk, and he only, could legally call such election. It was said : "The election having been called by an unauthorized person, that, and its results, are void and of no effect. Neither has any greater validity than the unauthorized action of a mass meeting would have." We view the call of the election, here, by the mayor alone, equally without authority as it was in the cases cited, and that they, with the other authorities they refer to, must be held as conclusive of the present case.

It is suggested as a ground of distinction which should vary the construction in the present case, that the cases cited were railroad subscription cases, where the effect of the ruling was to relieve the municipalities from indebtedness. The avoidance of the payment of debts does not stand in such favor

with courts of justice, that they adopt any exceptional rules of construction to secure that result. The decisions were upon the general legal principle applicable to all cases, irrespective of particular effect, that the person required by law to call an election and fix the time and place of holding it must call it, or the election will be invalid.

Though there may have been a palpable omission of duty on the part of the council in not calling the election, and for the corrupt purpose, as alleged in the plea, that would not give to the mayor alone the power to call the election. For any unreasonable non-performance of duty by the council in this respect, there would be a remedy by *mandamus* to compel them to do their duty, as in *Village of Glencoe* v. *The People,* 78 Ill. 382.

It is contended by appellant, that if the election on the 15th of January, 1878, was unauthorizedly called by the mayor, and so not valid, that the subsequent action of the council in canvassing the returns of the election, and in passing the resolution of April 11, 1878, approving the action of the mayor in giving notice of the first annual election under the general law of 1872 for the election of city officers on April 16, 1878, and the registry by the Secretary of State of the city as organized under the general law of 1872, ratified the election and cured all defects. The law requires the corporate authorities of the city to file a certificate of the result of the election in the office of the Secretary of State.

In ordinary municipal transactions, which require no action to make them valid except that of the mayor and council, the principle of ratification may apply; but where some other power must have acted—as here, a majority of the voters of the city must have voted for the change of organization at a legal election—the principle, we conceive, has no application. In order to the adoption of the general law of 1872, the consent of the inhabitants of the city was necessary, to be manifested by a majority vote taken at a legal election. The city council, of itself, independent of such vote, could not adopt

the law and effect a change of organization; and if the vote which was taken failed to do this, by reason of the election being void, manifestly, any subsequent action of the council or of the Secretary of State would be powerless to effect such result.

The vote so had could not be taken, legally, as an expression of the consent or will of the voters of the city.

It was remarked in *Marshall* v. *Silliman*, 61 Ill. 224, in reference to an actual vote of a town for a subscription, at an election held without authority of law, and where there was a subsequent act of the legislature purporting to legalize and confirm the election: "It can not be said that the town has ever consented to the creation of this debt. The so-called vote was an idle form. Persons opposed to the subscription were under no necessity or obligation to vote against it, because they had a right to regard the entire proceeding as a nullity."

And it might be said, further, that such an election would be without the legal safeguards of a fair election. Minors and aliens, and other persons not entitled to vote, might vote at such an election with impunity, and in like manner legal voters might multiply their votes. And the cases cited hold such elections called by another and different power than the one to whom the authority was given to be absolutely void, and incapable of ratification.

The fact, as averred in the plea, that three of the relators participated in the election, is without effect, as regards the three others. Any right there may have been to contest the election, can not be held as exclusive of the present proceeding.

The conclusion is, that the election on the 15th day of January, 1878, not having been called by the power to whom authority was given, but by another power, was without warrant of law and void, and the vote taken thereat a nullity, and, consequently, that the city of East St. Louis has not become organized under the general law of 1872, and that the defendant's claim of title to office under an election held on the 16th day of April, 1878, in pursuance of the provisions of that law, is invalid, and can not be sustained.

The demurrer to the plea was properly sustained, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*