Bissell, J.,
delivered the opinion of the court.
*473 Lake county is divided into five county commissioner districts. On the 25th of October, 1895, Henry Ludwig, who was a member of the board, died. His death created a vacancy. Gov. Mclntire appointed Andrew N. Dix for the unexpired term, and the attempt to elect James H. Kerwin to the office on the 5th of November following, led to this contest. The governor añade the appointment under the authority conferred by the general statutes. By section 537 of the Statutes of 1883, it is provided that in case of a va-* caney in the office of county commissioner, the governor shall fill it by appointment, and the appointee shall hold the office until the next general election, or until the vacancy is filled by election according to law. It was under this statutory power that the governor appointed Dix. After his appointment Dix filed his bond, took his oath of office, and attempted to discharge its duties from which he was prevented by the' action of the county commissioners, who recognized Kerwin as the legal and legitimate member. Thereupon, on the refusal of the district attorney to act, Dix on his own motion filed this relation and attempted to establish his .title to the office. We only have the complaint before us because it was adjudged insufficient on a demurrer, and our statement is based on the allegations of that pleading. Whether on the framing of an issue, and the introduction of proof, a different question will be presented we are unable to determine, and our judgment of necessity rests solely on the sufficiency of the complaint to state an apparent right to the office. The chief allegation on which the relator bases his rights is one which charges that the clerk failed to give the statutory notice of the election to fill the unexpired term under the general acts relating to elections. The county clerk gave no notice that a county commissioner was to be elected in the particular district by a publication in a paper for fifteen days and posting such notice at the various polling places for the same period. The act which requires it, is section 1170 of the General Statutes. The statute is specific, precise and definite, and requires the notice to be published *474 and posted for that length of time. The demurrer of course concedes that that was not done, hut there is an attempt to escape its force by the asserted legality of the procedure adopted by the central committee of the People’s Party of Lake county. On the 26th of October, which was the day following Ludwig’s death, this committee, composed of Nicholson and Tucker, who were chairman and secretary, undertook to file with the county clerk and recorder of Lake county, a certificate of the nomination of Kerwin. We are unadvised as to whether they were all the members of the committee, or of whom it was composed, or whether there were other members, all of whom concurred in the proceedings taken by the chairman and secretary. In any event they signed and swore to the certificate which seems in its general outlines to be in conformity with the Statutes of 1891 relating to certificates of nomination, providing the committee possessed the power to nominate under these circumstances and at that time. Acting in accordance with the general directions of the election law, the certificate recited the resolution under which these persons assumed to act. It stated that this resolution was adopted by the People’s Party convention at the last session, and was substantially that the People’s Party central committee of Lake county was empowered to fill all vacancies that might exist or occur. It was under this authority, if any, that tírese persons assumed to act. For the purposes of the present appeal, the question suggested by these facts, is the only question which we need consider. We are quite of the opinion that this committee was wholly powerless in the premises, that the election was without validity, and that thereby the appellee Kerwin took no title to the unexpired term. This conclusion is based on the general hypothesis that the statute contemplates and directs that there shall be some public notice given of elections which are to be held for various public offices, and that this notice is a prerequisite to a valid election unless the particular case under consideration is without the operation of the statute because of what has been antecedently done. It may be quite true *475 that if the various parties had held conventions and nominated parties for different offices, and tickets had been regularly and duly printed and the clerk had failed to give the particular notice required by section 1170 the election might have been valid notwithstanding the failure. We are not prepared to hold that this statute is under all circumstances and at all times so far mandatory that a failure to observe its requirements will defeat an election otherwise regularly holden. There are many cases which hold that elections regularly held and persons regularly voted for on nominations made where there has been failure to observe some specific statutory requirement, will not thereby be necessarily defeated and the direction may because of the excusing circumstances be held directory rather than mandatory. We do not believe the circumstances of the present case, as they are now exhibited, bring it at all within this rule. The theory of elections is that there shall be due notice given to the voters, and that they must be advised either by a direct notice published by the clerk, as provided by statute, or by proceedings taken by the voters and the people generally in such way as that it may be fairly inferred that it was generally and thoroughly well understood that a particular office was to be filled at the election, so that the voters should act understandingly and intelligently in casting their ballots. This construction of section 1170 is entirely justified by the two sections preceding it, although in the former case there is an absence of the definite provision which exists in the other. According to sections 1168 and 1169 in case of the election of officers for the executive or judicial department, the secretary of state is bound to give thirty days’ notice of it, and in the case of a vacancy which is to be filled at the election, he must likewise give thirty days’ notice. It was evidently the legislative purpose to require these notices to be published to give the voters full information of the offices which are to .be filled. These three sections were not repealed by the election act of 1891, nor are there any provisions in that election law, commonly known as the Austra *476 lian Election Law, which covers the precise case. According to this law nominations are to he made in a certain way, certificates are to be filed either by convention, by committees or on the petition of voters, the tickets are to be printed at the public expense and sundry notices must be published and posted to cover the various contingencies as they may arise. We are unable to see that the present case is at all brought within the provisions of that act. ' What would have been the case had the various parties called conventions and there had been time enough to act so that the electors of the comity could be presumed to have had notice, or if the antecedent convention had clothed the county central committee with authority to make certificates of nominations in case of a vacancy in any office, we do not determine. As the case stands on the present record, the committee which assumed to act, was entirely powerless in the premises. The authority given to the county central committee and the cases in which they are authorized by that election law to act are evidently cases where there have been antecedent nominations by a convention or by conventions, and vacancies have occurred in the nominations thus made, either by death, resignation, or declination. Then the committee can fill them. The resolution of the People’s Party convention as contained in the certificate which Nicholson and Tucker signed was evidently intended only to give them power to act with reference to the nominations made by the convention which passed the resolution. There was no grant of authority to this committee to make a nomination in case of the death of an officer who had been duly nominated and elected, and being without express authority there was no implication that these persons represented the People’s Party for any purpose, or at least for the purpose for which they assumed to act. Lacking this special authority, what they did was entirely nugatory. Since there was no notice published according to the statute, we may not assume that the nomination was regularly made or that the voters were duly notified that the office was to he filled at that general election *477 nine days afterwards. It has been generally held that some notice, regular in its form and pursuant to the requirements of law must be given as a safeguard to popular elections, that the people may be informed for what officers they are to vote. Of course it might easily be true, as has already been suggested, that if nominations had been made for an office, certificates regularly filed, and tickets regularly printed, even though the clerk had failed to publish his notice, there would be no presumption that the body of the voters were uninformed as to their rights and as to the positions which were to be filled. People v. Porter, 6 Cal. 26; Secord v. Foutch, 44 Mich. 89; Adsit v. Secy. of State, 84 Mich. 420; Allen v. Glynn, 17 Colo. 338; Stephens v. The People, 89 Ill. 337.
The force and effect of these suggestions is very apparent from what is exhibited by this record. It would appear that there were no votes cast for any nominees except those of the People’s Party and of the Democratic Party; no other party was represented, and no other party nominated a ticket. It was assumed by the other political organizations that the statutory power conferred upon the governor to appoint a commissioner to fill the vacancy, who should hold office until the general election, or until his successor was duly elected and qualified, covered the precise case, gave the governor power to act, and that his appointment regularly filled the office. How broad and general this impression was we cannot discover. Evidently it had its influence on the voters and this proceeding would seem to be an irregular one, and an attempt on the part of this self-constituted committee, with no authority, except that which they assumed, to put into the vacant position a person who was not regularly voted for by the people. So far as we can see this committee did not represent any party nor any convention for the purpose for which they attemptéd to act, and were no more the representatives of the People’s Party than the three tailors were the representatives of the people of England.
Under the election law of 1891 conventions are given cer *478 tain powers, and the committees which that convention may appoint are given authority, if the resolution is broad enough for the purpose, to file certificates of nomination at certain times and at certain dates and subject to certain limitations and conditions. Public notice must be given of what has been done by these conventions or committees and the dates and time of these notices are prescribed. None of these provisions are applicable to the present case. We have been referred to no section which provides for this contingency, and since it is entirely covered by the general statutes, which were unrepealed, we must conclude as we are at present advised, that the appointment by the governor was a legal one, and that there was no valid nomination or election in November, 1895, and the demurrer to the complaint was therefore improperly sustained. The judgment will be reversed.

Reversed.