THE PEOPLE *ex rel.* M. Slusser, State's Attorney,

*v.*

E. H. GARY *et al.*

*Opinion filed April 16, 1902.*

1. ELECTIONS—*effect where law prescribes both time and place for holding election.* If both the time and place of holding an election are prescribed by law, every voter is presumed to take notice of the law and to deposit his ballot at the time and place appointed, since the right to hold the election in such case is derived from the law, and not from the clerk's notice.

2. SAME—*section 15a of the Drainage act applies to elections in union districts.* Section 15a of the Farm Drainage act, as added in 1895, (Laws of 1895, p. 167,) providing that elections shall be held on the second Saturday in March of each year, between the hours of two and six o'clock P. M., applies to drainage districts lying in two towns as well as those lying in one town.

3. PLEADING—*what not essential to plea setting up election of drainage commissioners.* If a plea to a count in an information in *quo warranto* attacking the election of respondents to the office of drainage commissioners alleges that notices of the election were posted more than ten days before the day for holding the election, and names the day, it is not necessary that it name the hours for holding the election, since the hours are prescribed by statute.

4. SAME—*when mistake in date may be rejected as surplusage.* If a plea in *quo warranto* alleges that notices of an election for drainage commissioners were posted "for more than ten days prior to the said 14th of March, 1897, the day for holding said election," the fact that the date should have been March 13 does not render the plea bad, since the date may be rejected as surplusage, leaving the averment to read, "for more than ten days prior to the day for holding said election."

5. SAME—*when allegation as to taking oath of office is sufficient.* A plea setting up the facts as to the respondents' election to the office of drainage commissioners, which alleges that they "took the oath of office required by the statute," is sufficient without alleging specifically that the oath was taken before a proper officer and setting forth the substance of the oath, since the form of oath is prescribed by statute, and no other oath is necessary.

6. SAME—*when plea need not set forth organization of drainage district.* Where one count of an information in *quo warranto* proceeds upon the assumption that the election of the respondents to the office of drainage commissioners was invalid, a plea to such count which presents only the one issue, which is as to the validity of

the election, need not set forth the proceedings for the organization of the district.

7. SAME—*party may reply to pleas though his demurrer is overruled.* Although, by failing to stand by a demurrer to a plea after it has been overruled, the sufficiency of the plea, in law, to bar a recovery is admitted, yet the pleaders may by replication make an issue of fact upon the allegations of the plea.

8. SAME—*when it is error to sustain demurrer to replication.* In *quo warranto* to test the legality of the organization of a drainage district, the jurisdictional facts as to the signing of the petition and the holding of adjourned meetings may be inquired into, and although such facts are alleged in the respondent's plea, yet they may be denied by replication; and it is error to sustain a demurrer to the replication upon the ground that it seeks to impeach the record as set up in the plea.

9. SAME—*effect where certiorari proceeding is set up in bar of quo warranto.* Where a plea in *quo warranto* to test the legality of the organization of a drainage district alleges certain previous *certiorari* proceedings and attempts to set up the same as in bar of the action in *quo warranto*, the petitioner may by replication deny that the record in the *certiorari* proceeding was a true one.

10. QUO WARRANTO—*judgment in certiorari is not a bar to quo warranto.* The legality of the organization of a drainage district can be attacked only by a direct proceeding by *quo warranto*, and hence a prior judgment in *certiorari* proceedings affecting the same district cannot be set up in bar of an action of *quo warranto*.

11. SAME—*Attorney General may file information against a drainage district at any time.* A drainage district is a public corporation, and the Attorney General or State's attorney may, where the rights of the public are involved, file an information in the nature of *quo warranto* to test the legality of the organization of the district, without regard to the lapse of time since its organization.

APPEAL from the Circuit Court of DuPage county; the Hon. HENRY B. WILLIS, Judge, presiding.

This is an information in the nature of a *quo warranto*, filed on leave in the circuit court of DuPage county by the State's attorney of that county against E. H. Gary, Jesse C. Wheaton and John Weisbrook, appellees, requiring them to show by what warrant and authority they claim, that there is such a drainage district as Union Drainage District No. 1 of the towns of Milton and Winfield in said DuPage county, Illinois, and by what warrant

and authority they claim to hold and execute the said office of drainage commissioners of said alleged Union Drainage District No. 1 of the towns of Milton and Winfield in said DuPage county.

The information contains two counts. The first count challenges the organization of the drainage district. The second count relates to the election of the drainage commissioners of the district, who were in office at the time of the filing of this information.

To the second count of the information, the appellees filed one plea relating to their election and qualification as drainage commissioners. To this plea the appellant demurred. The demurrer was overruled, and the appellant electing to stand by the demurrer, the court below quashed the second count of the information, and dismissed the *quo warranto* proceedings, so far as they related to that count. To this ruling and order of the court, the People, by the State's attorney of said county, duly excepted and prayed an appeal to this court.

To the first count of the information the appellees filed three pleas. The first sets up the proceedings had in organizing the district; the second, the proceedings had and judgment rendered in certain *certiorari* proceedings in the circuit, Appellate and Supreme Courts; and the third plea sets up an estoppel by alleged delay and *laches* and limitation on the part of the People. Each of these pleas was demurred to by the appellant, and the court overruled the demurrers. Thereupon, the appellant filed replications to the pleas denying that the said union district No. 1 of the towns of Milton and Winfield, DuPage county, Illinois, was lawfully and duly organized, and existing as such when the information was filed; and alleging that the record and proceedings, as amended in the *certiorari* case, were false and fraudulent, and were not a true record of the proceedings had in reference to the drainage district, etc.; and denying that there was any such estoppel by *laches*, etc., as was claimed

by the appellees. Besides the original replications filed
to the three pleas to the first count of the information,
additional replications were filed. To all of these rep-
lications the appellees filed demurrers. The demurrers
to these replications were sustained by the court. The
People, by the State's attorney, elected to stand by the
replications, and thereupon the court quashed the first
count of said information, and dismissed said *quo war-
ranto* proceedings; and to this ruling and order of the
court the People, by the State's attorney, excepted and
prayed and perfected an appeal to this court.

M. SLUSSER, State's Attorney, (HOPKINS, DOLPH &
SCOTT, of counsel,) for appellant:

Elections must be held at the time and place provided
in the statute. *Stephens* v. *People*, 89 Ill. 343; *Snowball* v.
*People*, 147 id. 260; *Simons* v. *People*, 18 Ill. App. 588.

The statute provides that drainage commissioners
shall take an oath of office, and that the same shall be
taken before some officer authorized to administer oaths.
Drainage act, chap. 42, sec. 15*a*.

The plea, in speaking of the election of each of the
above named appellees, states that the elections were
held on due notice, etc. This is a conclusion, and not a
fact. A plea in a *quo warranto* case must state the facts.
*Carrico* v. *People*, 123 Ill. 203; *Clark* v. *People*, 15 id. 217.

This being a proceeding by information in the nature
of a *quo warranto,* appellees were obliged either to dis-
claim, in which case the People were at once entitled to
judgment, or to justify, in which case it was their duty
to set out their title specifically. It is not enough to
allege generally that they were duly elected to office. It
is necessary to state particularly how they were elected
and how the school district of which they claimed to be
directors had been formed. *Carrico* v. *People*, 123 Ill. 203.

A plea to an information in the nature of *quo warranto*
must aver facts, and not conclusions; and those facts

must be set out specifically. *Carrico* v. *People*, 123 Ill. 200; *Rayfield* v. *People*, 144 id. 332; *Howard* v. *Drainage Comrs.* 126 id. 54; *Allman* v. *Drainage Comrs.* 55 Ill. App. 22; *Kamp* v. *People*, 141 Ill. 9; *People* v. *Drainage District*, 181 id. 179.

The land owners' petition to form a drainage district is necessary and jurisdictional. *Carrico* v. *People*, 123 Ill. 204; *O'Connel* v. *Railroad Co.* 184 id. 308; *People* v. *Cooper*, 139 id. 463; *Moore* v. *Baker*, 35 id. 382.

Where an adjourned meeting is required by law the record must show that it was held. *Comrs. of Highways* v. *Harper*, 38 Ill. 109; *Comrs. of Highways* v. *Wood*, 62 id. 391.

There must be a strict compliance with the law where the property of the individual is to be interfered with. The provisions are in the nature of conditions precedent, and the party claiming authority must affirmatively show compliance. *Hyslop* v. *Finch*, 99 Ill. 171; *Poole* v. *Breese*, 114 id. 594.

The legality of the organization of a corporation can be attacked judicially, and examined only by a direct proceeding by *quo warranto*. *Osborn* v. *People*, 103 Ill. 224; *Blake* v. *People*, 109 id. 504; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *Renwick* v. *Hall*, 84 id. 162; *Evans* v. *Lewis*, 121 id. 475; *People* v. *Jones*, 137 id. 35.

*Certiorari* does not lie for the purpose of determining whether a drainage district has a legal existence. If the petitioner desires to call in question the validity of the organization of the district he must proceed by *quo warranto*. *Lee* v. *Drainage Comrs.* 125 Ill. 47.

On *quo warranto* the inquiry is much broader, and the facts may be inquired into, whether of record or not. *People* v. *Koerner*, 21 Ill. 67; *People* v. *Forquer*, Breese, 110.

*Certiorari* only goes to the face of the record. The truth of the record in *certiorari* cannot be inquired into, but in *quo warranto* the truth of the record can be inquired into. *Lee* v. *Drainage Comrs.* 125 Ill. 47; *Drainage District* v. *Griffin*, 134 id. 330; *Drainage District* v. *Volke*, 163 id. 243; *People* v. *Peoria*, 166 id. 520.

BOTSFORD, WAYNE & BOTSFORD, for appellees:

The allegations in appellees' plea that notice was given for the election for drainage commissioners for said district are sufficient. *Schuler* v. *Hogan*, 168 Ill. 369; *People* v. *Cooper*, 139 id. 461; *People* v. *O'Hair*, 29 Ill. App. 242; *State* v. *Tolan*, 33 N. J. L. 195.

Where the time and place for an election are fixed by law, all persons interested are bound to take notice of an election so held. *Stephens* v. *People*, 89 Ill. 343; *Knox County* v. *Bank*, 147 U. S. 91; *Snowball* v. *People*, 147 Ill. 260; *Berrey* v. *McCullough*, 94 Ky. 247; *Commonwealth* v. *Smith*, 163 Mass. 411; Cooley's Const. Lim. (6th ed.) 759.

This plea sufficiently avers that the drainage commissioners took the oath required by statute. They were not required to take an oath to support the constitution of the United States or of this State. Starr & Cur. Stat. 1896, par. 120, p. 1542; *School Directors* v. *People*, 79 Ill. 511.

The *certiorari* proceedings pleaded by appellees to the first count of the information are a bar to any recovery on that count. The second replication to appellees' second plea to said first count is bad in not stating facts, but only inferences of fraud by the commissioners in making up the drainage record. *Beatty* v. *Nickerson*, 73 Ill. 605; *Roth* v. *Roth*, 104 id. 46; *Hopkins* v. *Woodward*, 75 id. 62.

The appellant having once selected a remedy to test the organization of this drainage district is concluded by the judgment therein pronounced. *Drainage District* v. *Griffin*, 134 Ill. 339; *Yourt* v. *Hopkins*, 24 id. 326; *Harms* v. *Stier*, 51 Ill. App. 234; *Conklin* v. *Cunningham*, 38 Pac. Rep. 170; *White* v. *White*, 34 Atl. Rep. 425.

*Laches* may be imputed to the People or to the relator in a *quo warranto* proceeding, when the object of the proceeding is to affect private or public rights or to subserve personal ends. *Chapman* v. *Drainage Comrs.* 28 Ill. App. 17; *People* v. *O'Hair*, 29 id. 239; *People* v. *Boyd*, 30 id. 608; 132 Ill. 60; *People* v. *Railroad Co.* 54 Ill. App. 348; *Catlett* v. *People*, 151 Ill. 25; *Drainage Comrs.* v. *Volke*, 163 id. 243.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first question, which arises in the case, is whether or not the court below erred in overruling the general and special demurrer, filed by the appellant to the plea filed by appellees to the second count of the information, the appellant having elected to stand by the demurrer so overruled. The plea to the second count of the information relates to the election and qualification of the appellees as drainage commissioners; and it is claimed that the plea fails to set forth specifically the various steps taken in the several elections of appellees, as required by the statute.

The first objection made to the plea is, that it neglects to set forth that the several elections of the above named appellees were held between the hours of two and six o'clock P. M. on the second Saturday in March. Section 15*a* of the act of June 27, 1885, in reference to Farm Drainage provides, among other things, that "it shall be the duty of the town clerk to call an election in each district in his township, including the new districts organized during the previous year, by giving ten (10) days' notice that an election will be held (specifying time and place); said notices shall be posted in three (3) conspicuous places in said districts. Elections shall be held in the several drainage districts, organized under this act, on the second Saturday in March of each year between the hours of two and six o'clock P. M." (2 Starr & Curt. Ann. Stat.—2d ed —p. 1542). It is true that elections must be held at the time and place provided in the statute. (*Stephens* v. *People ex rel.* 89 Ill. 337; *Snowball* v. *People ex rel.* 147 id. 260). But it is a well established rule that, where both the time and the place of an election are prescribed by law, every voter is supposed to take notice of the law, and to deposit his ballot at the time and place appointed, the right to hold the election in such case being derived from the law and not from the notice. (Cooley

on Const. Lim.—2d ed.—sec. 603; McCrary on Am. Law
of Elections, sec. 118; *Stephens* v. *People ex rel. supra*). It
is, however, stated in the plea that notices were given
by the town clerk of the township of Milton, and were
published by the posting of the same, as required by the
statute, for more than ten days prior to the day for hold-
ing said election. The pleas name the day, upon which
the election was to be held, and, as the law requires that
the election should be held between the hours of two and
six o'clock P. M., it will be presumed that the voters took
notice of the particular hours of the day when the voting
was to be done. It is said, however, that, as to one of
the elections of one of the three appellees, the plea stated
that the election was held on Saturday March 14, 1897,
but that March 14, 1897, was Sunday, and that the court
will take judicial notice of that fact. The giving of the
date is manifestly a clerical error: The averment of the
plea is, that these notices were posted for this election
"for more than ten days prior to said 14th day of March,
1897, the day for holding said election." The day of the
month mentioned may be excluded as surplusage, so that
the averment would read "for more than ten days prior
to the day for holding said election." As to the day for
holding the election, the averment of the plea is suffi-
ciently certain and not misleading.

The next objection, made to the plea, is that it states
that the appellees, at the several elections mentioned in
the plea, took the oath of office without stating specific-
ally that the oath of office was taken, as required by the
statute, before an officer authorized to administer oaths,
and without further stating that an oath was taken by
the appellees to support the constitutions of Illinois and
of the United States. The plea alleged that the person
elected "took the oath of office required by the statute."
The form of the oath to be taken by the drainage com-
missioners is prescribed by section 15*a* of the Drainage
act, as above set forth. This being so, it was not the in-

tent of the legislature to require any other or additional oath than the one so prescribed. (*School Directors* v. *People ex rel.* 79 Ill. 511). Involved in the allegation of the plea that the person elected "took the oath of office required by statute" is the statement that he took the oath prescribed by the statute before an officer authorized to administer the oath. It was not necessary to state all the details as to the mode and manner of taking the oath.

It is furthermore claimed by the appellant that section 15*a*, as above quoted, does not apply to the election of commissioners for union drainage districts. The point made is that sections from 11 to 47 of the act of June 27, 1885, relate wholly to districts in one town, and that section 48, entitled "Union Districts," relates to the districts in two towns, such as the one under consideration in the case at bar. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 1556). It is said that in 1895 section 15*a* was added as an amendment to that part of the act which relates to one town, and does not purport to affect those portions of the act relating to drainage districts lying in two towns. A careful examination of section 48, in connection with the preceding sections of the act, will show that the election provided for in section 15*a* applies to drainage districts lying in two towns, as well as to those lying in one town. Section 48, which relates to union districts lying in two towns, provides that "the clerk and commissioners shall have like powers and duties, as provided for such officers in districts wholly in one town." (Ibid. p. 1557). Section 48 also provides that the commissioners when selected are to meet at the town clerk's office "as provided in section twelve (12) of this act, or to meet as provided in section sixteen (16), as the case may be." (Ibid.)

It is furthermore urged, as an objection to the plea by the appellants, that the appellees in the first instance should have set out every material fact relating to the organization of the so-called Union Drainage District No. 1, so that, from an inspection of the plea, the court

could see whether or not the statute had been complied with, and the district had in fact been legally formed. (*Clark* v. *People ex rel.* 15 Ill. 213; *Carrico* v. *People ex rel.* 123 id. 198). Inasmuch as the second count of the information is predicated upon the assumption, that the election of the appellees was invalid and without lawful authority, the one issue presented by the plea related to the election. There is no formal averment in this plea that the district was not legally organized, the organization of the district being merely matter of inducement, and therefore not traversable. (*Lamping Bros.* v. *Payne*, 83 Ill. 463).

So far as the second count of the information is concerned, we are inclined to think that the plea filed by the appellees was a good one, and that the demurrer thereto was properly overruled by the court.

*Second*—The second question, presented by the record, is whether the court below erred in sustaining the demurrers, filed by the appellees to the replications filed by the appellant to the pleas of the appellees to the first count of the information. The first count challenges the organization of the drainage district, and not, as does the second count, the validity of the election of the drainage commissioners.

The appellant demurred to each of the pleas filed by the appellees to the first count of the information, and, when the demurrers were overruled by the court, did not stand by the same, but replied to the pleas. By thus pleading over the appellant admitted the sufficiency of the pleas in law to bar a recovery under the first count. (*Peck* v. *Boggess*, 1 Scam. 281). But while this is so, the appellant had a right in the replications to make an issue of fact upon the allegations of the pleas, even though these allegations, if true, constituted a sufficient defense as a matter of law.

The first plea, filed by the appellees to the first count of the information alleged that on November 8, 1886, a

petition was addressed to the commissioners, and filed on the same day in the office of the town clerk of the town of Milton, which comprises the greater part of the lands described in the petition; that, in the petition, it was stated in substance that the signers thereto consti- tuted the majority of the adult owners of lands lying in the district proposed to be organized, and the owners in the aggregate of more than one-third of the lands lying in said district. This plea also alleged that the three commissioners of highways, selected to act as drainage commissioners, met at the office of the town clerk of the town of Milton on November 10, 1886, in a preliminary meeting to organize such union drainage district; that, on motion, the said meeting was adjourned to said town clerk's office until Friday morning, November 19, 1886, at the hour of nine o'clock A. M.; that, on November 11, 1886, the town clerk gave notice of a meeting of said drainage commissioners at the town clerk's office in said town of Milton at the hour of nine o'clock A. M. on the 19th day of November, 1886, in pursuance of said adjourned meeting held on November 10, 1886; that the town clerk further gave notice November 11, 1886, by posting three written notices in three public places in and near to the said drainage district, that a meeting of the drainage commissioners would be held at the office of said town clerk on the 19th day of November, 1886, at nine o'clock A. M., for the purpose of organizing said drainage district, etc. The plea then avers that on the 19th day of November, 1886, the drainage commissioners met at the town clerk's office, and proceeded to ascertain and verify the facts and statements contained in the pe- tition, and made a written statement of their findings, etc.; that they then and there, by public announcement, adjourned said meeting until the 27th day of November, 1886, at the hour of nine o'clock A. M. to be held upon the ground of the proposed ditch; that such facts so found by the commissioners were on the day of said meeting

put in writing and entered by the clerk in his record; that, on November 27, 1886, in pursuance of said last mentioned adjournment, the commissioners met on the land of the proposed ditch, with all the commissioners present, and went over and examined the lands described in the petition, and carefully examined the same, and employed a competent civil engineer to survey, estimate and make a plat of such proposed ditch and drainage district, and thereupon adjourned to the 10th day of December, 1886; that afterwards, in pursuance of said adjournment, on December 10, 1886, they met again at the clerk's office of said town, and approved the said plat, and completed the organization of said district, and entered an order to that effect, and declared the district fully organized; and thereafter, on December 27, 1886, met and agreed upon a graduated and classified scale for estimating the benefits, received by the owners of said lands by reason of said proposed drainage, and filed the same in the town clerk's office, and gave notice for a hearing thereof to be held in said office on January 4, 1887, etc.

The additional replication filed by the appellant to this plea denied, that the petition filed as aforesaid was signed by a majority of the adult owners of the lands embraced within such district, and that the signers thereof were owners of more than one-third of the land in the said proposed district. This replication also averred that no meeting was ever in fact held on November 27, 1886, pursuant to adjournment, as stated in the plea, and that the commissioners, in consequence of not having held a meeting pursuant to said adjournment, lost all jurisdiction over the organization and formation of said district. The replication further denied that the commissioners met on December 10, 1886, at the town clerk's office, and completed the organization of said alleged union district, and entered an order to that effect and declared the district fully organized.

It will thus be observed that the additional replication, filed by appellant to the first plea of appellees to the first count of the information, made an issue of fact whether the petition for the organization of the drainage district was signed by the number of persons required by the statute, and whether the adjourned meetings, required by the statute, were held in pursuance of the alleged adjournments. We are inclined to think that the replication was good, as thus tendering issues of fact, and that the court erred in sustaining a demurrer to the same. The allegations of the replication are admitted by the demurrer filed to it by the appellees. Section 11 of the Drainage act of 1885 provides for the signing and filing of the petition above referred to; and section 14 provides that, after providing for the holding of the preliminary meeting, the commissioners shall then adjourn their meeting to a time, not less than eight days nor more than fifteen days, and publicly announce the same; and section 15 provides that, at the time appointed for the adjourned meeting, the commissioners shall meet and enter on their record an order organizing said drainage district, and that such district shall thereupon be declared fully organized. (2 Starr & Curt. Ann. Stat.— 2d ed.—pp. 1539-41). The organization of the drainage districts is a statutory proceeding, and every essential fact, necessary to the jurisdiction of the bodies organizing such districts, must appear affirmatively of record, as nothing will be intended or presumed to be within the jurisdiction. (*Payson* v. *People*, 175 Ill. 267). The petition of the land owners to form a drainage district is necessary and jurisdictional. (*People ex rel.* v. *Cooper*, 139 Ill. 461; *Carrico* v. *People ex rel.* 123 id. 198). When an adjourned meeting is required by law, the record must show that it was held. (*Comrs. of Highways* v. *Harper*, 38 Ill. 103; *Wood* v. *Comrs. of Highways*, 62 id. 391).

It is claimed by the appellees that the replication in question is bad because it seeks to impeach the record

set up in the plea. Such a replication would be bad in *certiorari* proceedings. The object of a writ of *certiorari* is to bring up the record of a proceeding from an inferior to a superior tribunal. The superior tribunal tries the case by the record alone as such record is returned in obedience to the writ, and not upon any issue of fact. The question to be determined is whether the inferior tribunal had jurisdiction, and whether it exceeded its jurisdiction. (*Whittaker* v. *Village of Venice,* 150 Ill. 195, and cases referred to). In a return to a writ of *certiorari* no facts *dehors* the record are certified, but simply the record itself. (*Comrs. of Highways* v. *Supervisors,* 27 Ill. 140). In *quo warranto,* however, the inquiry is much broader, and facts may be inquired into whether of record or not. Where the right in question depends upon facts, which can be established only by evidence *dehors* the record, the writ of *certiorari* is of no avail, but in such cases *quo warranto* is the proper remedy. (*Lees* v. *Drainage Comrs.* 125 Ill. 47; *Comrs. of Drainage District* v. *Griffin,* 134 id. 330; High on Ex. Legal Rem.—2d ed.—sec. 638; *People ex rel.* v. *Cooper,* 139 Ill. 461; *Drainage Comrs.* v. *Volke,* 163 id. 243; *People* v. *City of Peoria,* 166 id. 517). In *Drainage Comrs.* v. *Volke, supra,* it was said: "The judgment to be entered on the return to a common law writ of *certiorari* affects the validity of the record alone, and it must be determined from its face, solely, whether it is valid or invalid." But in this proceeding by information in the nature of *quo warranto,* the jurisdictional facts as to the signing of the petition, and as to the holding of adjourned meetings, can be inquired into. It follows that it was error in the trial court to sustain the demurrer to this replication.

*Third*—The next question is whether the demurrer, filed by the appellees to the replications filed by appellant to the second plea to the first count of the information, was properly sustained. This plea set up, as a bar to the *quo warranto* proceedings, certain *certiorari* pro-

ceedings formerly had in the name of the People on the relation of one John Bolwig.

In their second plea to the first count of the information the appellees allege that, on March 8, 1894, in the circuit court of DuPage county, the then drainage commissioners of said drainage district No. 1, etc., were impleaded in an action of *certiorari* at the suit of the People on the relation of John Bolwig, then an adult owner of lands embraced within the boundaries of said drainage district. The plea then sets up the proceedings in said action by *certiorari* in the circuit, Appellate and Supreme Courts. Those proceedings are set forth in full in *People ex rel.* v. *Drainage Comrs.* 165 Ill. 156, and need not be here rehearsed. The plea, after reciting such proceedings in *certiorari*, sets the same up as a bar to the present action. By the second additional replication to the plea last mentioned, appellant denies that the drainage record returned to the court in said *certiorari* proceedings was a true record of the proceedings, entered of record with reference to the alleged organization of said drainage district, and avers that the record presented to the court in the *certiorari* proceedings was a false record, and not a true one. The replication proceeds to aver that the petition for *certiorari* was filed in the circuit court of DuPage county on March 8, 1894, and that, thereafter on May 22, 1894, the attorneys, and the town clerk of the town of Milton, and certain alleged drainage commissioners of said alleged Union Drainage District No. 1 of Milton and Winfield townships, sought to fortify their said record by an untrue and false and fraudulent instrument in writing, containing untrue and false and fraudulent statements, resolutions and amendments to be added to and to take the place of parts of the true record in said drainage matter. Particularizing in reference to this matter, the plea averred that said commissioners on May 22, 1894, pretended to have adopted a resolution in words and figures as follows:

"*Resolved*, That there be added to the said record, under date of November 27, 1886, the following: At an adjourned meeting of the commissioners, duly held on the grounds of the proposed ditch on November 27, A. D. 1886, all the commissioners being present, the said commissioners personally went upon the lands in question included in the proposed district, and personally examined the same, and thereupon employed a competent civil engineer to make survey and estimates and a map and plat of his survey and of the proposed district. And thereupon the commissioners duly adjourned to meet at the clerk's office, December 10, A. D. 1886.

"*Resolved further*, That there be added to the said record, under date of December 10, 1886, the following: And thereupon the said petitioners and the said commissioners, still desiring the formation of the said drainage district as prayed in the original petition, and shown in detail in the said plat and map, approved and adopted as aforesaid, and no signatures being withdrawn, it was on motion ordered, that the said petition be granted and said drainage district, as shown in said plat and map, be organized, and the said district is hereby declared fully organized."

The plea then avers that said pretended resolution was not in accordance with the facts; that no such proceedings were ever had or entered of record, as were recited and attempted to be supplied by said pretended resolution; that the record of said pretended district, as it existed before said amendments were made thereto, was the true record of said district; and that thereafter the alleged commissioners made return in the *certiorari* proceedings by filing the pretended record of said alleged district so falsely amended; that it was said false record, which was involved in and passed upon in said *certiorari* proceedings; and that the same was so falsely and fraudulently prepared in order to procure a finding in the *certiorari* proceeding.

The judgment in the *certiorari* proceeding could not be pleaded as a bar in the present proceeding. As has already been stated, in a *certiorari* proceeding the writ brings up the transcript of an inferior tribunal for inspection, and the case is tried and determined upon the

record alone, no evidence outside of the record being admissible. The only thing to be determined in the *certiorari* proceeding is, whether the municipality or inferior tribunal has exceeded its jurisdiction. The common law writ of *certiorari* cannot be used to determine whether a certain corporation, such as a drainage district, has a legal existence. If the drainage district has not been legally incorporated, the statute furnishes a complete remedy by *quo warranto* whereby the question may be determined and settled in a direct proceeding. If a petitioner desires to call in question the validity of the organization of the district, he must proceed under the provision of the statute in reference to *quo warranto*. (*Lees* v. *Drainage Comrs. supra; Comrs. of Drainage District* v. *Griffin, supra*). Inasmuch as the *certiorari* proceeding only decides whether the municipality, assuming it to be legally organized, has exceeded its jurisdiction or not, the *certiorari* judgment cannot be pleaded as a bar in a *quo warranto* proceeding, where the question is as to the legal existence of the corporation or district. The questions in the two proceedings are not the same. The question, whether this drainage district was legally organized, was not determined, except incidentally, in the *certiorari* proceeding. In the latter proceeding, the question was whether the drainage district had the power to extend its boundaries, and not whether the district was originally organized in a legal way. The legality of the organization of a corporation or municipality, or of a drainage district, can be attacked judicially and examined only by direct proceeding by *quo warranto*. (*Osborn* v. *People ex rel.* 103 Ill. 224; *Blake* v. *People,* 109 id. 504; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *Evans* v. *Lewis,* 121 id. 478; *Renwick* v. *Hall,* 84 id. 162). It is true that appellant demurred to the plea now under consideration, and, when the demurrer was overruled, failed to stand by it; and by thus pleading over the appellant has admitted the sufficiency of the plea in law, assuming the facts therein

set up to be true and the record therein mentioned to be a true and correct record. The judgment in the *certiorari* proceeding was based upon a record certified to the court as having been a true record. But the replication to the plea denies that the record was a true record, and claims that it was a false and pretended record, created and made nearly eight years after the facts recited in it occurred, and after the time when the record should have been made under the statute. The demurrer filed by the appellees to this replication admits the truth of the facts contained in it. In the *certiorari* proceeding the court accepted the record as made and presented to it, and could not inquire into the manner in which the record was created. In this proceeding by *quo warranto*, however, the issue of fact can be made whether or not the record was false and fraudulent, and that matter can be tried. Hence, we are of the opinion that the court below erred in sustaining the demurrer to this replication.

*Fourth*—A further plea was filed by the appellees to the first count of the information, setting up the lapse of time, and pleading *laches* and delay as against the appellant. The plea also avers that certain expenses were incurred in organizing, surveying, mapping, and constructing ditches, etc. After the demurrer filed to this plea by the appellant was overruled, appellant filed a replication thereto, denying the allegations of the plea, and making an issue of fact in relation thereto. The demurrer filed by the appellees to this replication, which is additional replication No. 3 to the third plea of appellees to the second count of the information, admits the truth of the facts set up in the replication.

In the first place, a drainage district of the character of the district here under consideration is a public corporation. (*Payson* v. *People*, 175 Ill. 267; *Elmore* v. *Drainage Comrs.* 135 id. 269). The Attorney General, or State's attorney, may file an information on behalf of the People where the interests of the public are involved at any

time; and lapse of time constitutes no bar to the proceeding in conformity with the maxim *nullum tempus occurrit regi.* Estoppel does not apply to a matter in the nature of a public right.. The State is not embraced within the Statute of Limitations unless specially named, and by analogy does not fall within the doctrine of estoppel. Nor are municipal corporations within the operation of the Statute of Limitations as respects public rights. (*Catlett* v. *People ex rel.* 151 Ill. 16; *McPhail* v. *People*, 160 id. 77; *People* v. *Brown*, 67 id. 435). The replication avers that no money was ever expended in the territory, over which the appellees claim jurisdiction. Even, there-' fore, if the expenditure of such money could operate as an estoppel *in pais* as to such a public corporation as this drainage district, the question of the fact of such expenditure is put in issue by the replication. The doctrine of estoppel *in pais* has been sometimes applied to municipal corporations, but such cases are exceptional, and when they occur the public is only held to be estopped on account of special circumstances, which would make it highly inequitable or oppressive to enforce public rights. It is doubtful whether the plea now under consideration sets up any such special circumstances, but if it does allege their existence, the fact of their existence is denied by the replication. We are, therefore, of the opinion that the court below erred in sustaining the demurrer to the replication.

For the reasons above stated, the judgment of the court below, so far as it quashed the first count of the information and dismissed the *quo warranto* proceeding, was erroneous.

Accordingly, the judgment of the circuit court of DuPage county is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.　　　　*Reversed and remanded.*