(No. 22865.—

THE PEOPLE *ex rel.* Otto Kerner, Attorney General, Petitioner, *vs.* JOHN C. MARTIN, State Treasurer, Respondent.

*Opinion filed February 21, 1935.*

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, and W. F. GRAY, of counsel,) for petitioner.

CLAYTON J. BARBER, for· respondent.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

A proposition authorizing the issuance and sale of bonds to the amount of $30,000,000 for relief purposes was submitted to the people of the State at a general election in November, 1934. It received a large majority of the votes cast for members of the General Assembly. Bids for the sale of the bonds were advertised for and one of the bids was duly accepted. The bonds were signed by the Governor and the Auditor of Public Accounts, but the respondent, John C. Martin, Treasurer of the State, refused to affix his signature because of a legal objection raised as to the sufficiency of the notice of election. By leave of court an application for a writ of *mandamus* against the respondent was filed on the relation of the Attorney General.

Section 4 of the law which authorized the submission of the proposition to the voters, directed "publication of this act to be made, once each week, for three months at least before the vote of the people shall be taken upon such act, and said publication shall be made in at least two daily newspapers, one of which shall be published in the city of Springfield and one in the city of Chicago." (Laws· of 1933-34, p. 11.) A proper publication was made in a daily newspaper published in Chicago, but in Springfield the publication was made in the *Illinois State Register* for the first half of the period required and in the *Illinois State Journal*

for the last half of such period. It is contended that the Springfield publications were not in compliance with the law, as it contemplated that the newspapers which made the publications should carry them throughout the entire period. We have no doubt of the correctness of this contention, and if the particular provision of the statute as to publication was mandatory, then the publication was not sufficient.

The general rule is, that when the time and place of an election are fixed by law, an omission to give the required notice of the election will not vitiate an election held on the day appointed by law, (*People* v. *Gary,* 196 Ill. 310,) but where the time and place of an election are not fixed by law and the election is to be called and the time and place are to be fixed by some authority named by the constitution or the statute, it has been held to be essential to the validity of such an election that it be called and the time and place thereof fixed by the agency designated by law and none other. *Stephens* v. *People,* 89 Ill. 337; *Snowball* v. *People,* 147 id. 260; *People* v. *Czarnecki,* 312 id. 271; *Campe* v. *Cermak,* 330 id. 463.

Section 18 of article 4 of the constitution provides that no debt shall be contracted by the State unless the law authorizing the same shall at a general election have been submitted to the people and have received a majority of the votes cast for members of the General Assembly at such election. It also provides that publication of said law shall be made for three months, at least, before the vote of the people shall be taken upon it.

The authority of the State to issue bonds is derived from the constitution. The directions contained in its provisions must be followed. No power rests in the General Assembly or elsewhere to materially alter them. The constitution directed that the law be submitted to the vote of the people at the general election. The act passed by the General Assembly designated the general election in No-

vember, 1934, as the day for holding the election. This designation not only fixed the time when but the places where the election was to be held. The provision of the constitution would have been fully met by a statutory requirement of publication of the law in only one newspaper once each week for at least three months before the day of the election. Those requirements were the essential constitutional provisions concerning the time, place and notice of the election. Other conditions may have been properly superimposed by the General Assembly, but it cannot be said that the additional conditions were essential and mandatory in the sense that a failure to comply with them would invalidate a bond issue which had been approved by a large majority of all the votes polled at the election.

In view of the literal compliance with the provisions of section 18 of article 4 of the constitution, it was the duty of the respondent to affix his signature to the bonds. It is therefore ordered that the peremptory writ of *mandamus* as prayed be awarded.

*Writ awarded.*